BOARD OF COMMISSIONERS OF RANDOLPH COUNTY *v.* BOARD OF COMMISSIONERS OF HENRY COUNTY.

[No. 3,894.   Filed October 9, 1901.]

COUNTIES.—*Expense on Change of Venue.—Allowance of Claim.— Costs.*—The auditing and allowance of the expense incurred in the trial of a civil action, on change of venue, by the court of the county in which the cause was tried, under the provision of §418 Burns 1901, is not conclusive upon the county or the auditor of the county from which the change of venue is taken, and the auditor may submit such claim to the board of county commissioners for adjudication.  *pp. 381-386.*

Board, etc., *v.* Board, etc.

COUNTIES.—*Struck Jury.— Compensation.—Payment by Party.—Costs.*—Under §536 Burns 1901, the party requiring a struck jury is liable for the payment of the fees for striking it and the compensation of the jury, and no part of such expense is a charge against the county. *pp. 391-399.*

SAME.—*Stenographers.—Costs.—Change of Venue.—* The allowance and payment of the claim of a shorthand reporter for services rendered in the trial of a cause out of the treasury of a county having a population less than 70,000 was not authorized under the act of 1875 and its amendments, relating to shorthand reporters, and such item of expense allowed and paid in the trial of an action on change of venue cannot be recovered from the county from which the change was taken. *pp. 399-402.*

SAME.—*Costs on Change of Venue.—Struck Jury.—*Under §418 Burns 1901, providing that the county from which the change of venue is taken shall be liable to the county to which it is taken for "the fees paid by such county to any of the regular panel of jurors not engaged in such trial," etc., such county is liable for the amount paid the regular panel in waiting and being present during the trial, although the case was tried by a struck jury. *p. 402.*

SAME.—*Costs on Change of Venue.—Court Officers.—*Under §418 Burns 1901, a county to which a change of venue has been taken is entitled to recover from the county from which the change was taken the amounts paid the clerk, sheriff, and bailiff for their attendance during the time the court was engaged upon the case. *pp. 403-406.*

COURTS.—*Allowance to Bailiffs.—Costs.—Night Services.—*The statute limiting the allowance to bailiffs to $2 per day contemplates a calendar day of twenty-four hours, and a bailiff is not entitled to an additional allowance for night services. *p. 406.*

From Delaware Circuit Court; *George H. Koons,* Judge.

The board of commissioners of Randolph county allowed only a part of a claim filed by Henry county for costs of trial on change of venue to the latter county. From a judgment of the circuit court allowing a larger amount, the board of commissioners of Randolph county appeals. *Reversed.*

*J. W. Thompson,* for appellant.
*Adolph Rogers,* for appellee.

BLACK, C. J.—In this cause, which was transferred to this court from the Supreme Court, the venue was changed to the court below from the Randolph Circuit Court, to

which it had gone by appeal from the board of commissioners of Randolph county. It is stated in the transcript of the proceedings before this board filed in the Randolph Circuit Court, that Henry county, by her auditor, filed her claim for $512, for costs of change of venue in the case of Albert F. Huddleston v. Cleveland, Cincinnati and St. Louis Railway Company, an itemized "statement of claim and account," with an appended statement or certificate signed by the judge of the Henry Circuit Court, being set out, constituting the complaint herein. The statement or certificate of the judge was to the effect that he had examined the foregoing account in favor of Henry county against Randolph county and had heard evidence concerning the same, and being advised as to the law in reference thereto, it was by him ordered and adjudged that the account was in all things correct, "and the amount thereof, to wit, $512, in the case of Albert F. Huddleston v. Cleveland, etc., R. Co., is now audited and allowed as a just and proper claim in favor of said county of Henry and against said county of Randolph, in said State, and the auditor of said county of Randolph is hereby ordered and directed to issue his warrant upon the treasurer of said county of Randolph, in said State, in favor of said county of Henry, and this shall be his sufficient voucher and authority for so doing;" the certificate of the judge being followed by a certificate of the clerk of the Henry Circuit Court signed by him, with the seal of that court affixed, authenticating the signature of the judge. The board of commissioners of Randolph county allowed the claim in part, to the amount of $175, from which decision the board of commissioners of Henry county appealed.

In the court below, the defendant, the appellant here, appeared specially and moved "to dismiss this appeal, and the pretended appeal in the above cause, and to dismiss this cause, and to strike the cause from the docket, and to strike out and reject said cause and the said pretended cause and the said pretended appeal." This motion having been over-

ruled, the cause was tried by the court, and upon request of the parties a special finding was rendered. The appellant excepted to the conclusions of law and to each of them.

The appellant has assigned as errors: "(1) The statement, claim, and complaint of the appellee does not state facts sufficient to constitute a cause of action against the appellant; (2) the court erred in overruling the appellant's motion to dismiss the said statement, claim, and cause of action; (3) the court erred in the conclusions of law stated upon the special finding of facts; (4) the court erred in each of the conclusions of law, separately and severally, stated upon the special finding of facts."

The motion which the court overruled was broader in its scope than the specification of error relating to that motion; but counsel have discussed the first and second specifications of error together as presenting the same subject, making no question, under these specifications, as to the liability of Randolph county, but questioning "the method of allowance and payment, the meaning and purpose of" the statute relating to expenses incurred in civil cases by one county in consequence of a change of venue in a cause thereto from another county, being §418 Burns 1901, §414 R. S. 1881, as follows: "In all cases where there has been or shall be a change of venue from one county to another, the county from which the change of venue shall have been or shall be taken shall be liable to pay to the county to which such change shall have been or shall be taken all such expenses as shall have been or shall be incurred by such county to which such change shall have been or shall be taken, in consequence of such change, and in all cases, the fees paid by such county to the jury trying the case, and any of the regular panel not engaged in such trial, allowance to bailiffs, and all other expenses necessarily incurred by such county, and consequent upon such change of venue and the trial of such cause. Such expenses shall be audited and allowed by the court to which such cases shall have been changed; and such court shall

certify such allowance to the auditor of the county from which the change of venue was first taken; and such auditor shall issue his warrant on the treasurer of the county for the amount so allowed and certified."

The section set out as above in the revised statutes of 1881 contains the provisions of an act of 1873 so far as the same related to civil causes, and remains in force as to such cases, not repealed by the repealing section, §1291 of the civil code of 1881. See *State, ex rel.*, v. *Moore,* 121 Ind. 116.

The argument of counsel under the first and second specifications of error relates, not to the character of the expenses which may be audited and allowed and certified, under the first portion of this section of the statute, but to the proper construction and application of the latter portion of the section; and it is claimed on behalf of the appellant that the auditor of Randolph county had no authority to refer the claim in question to the board of commissioners of his county, and that the action of the board of commissioners upon the claim was in no way binding upon the auditor or upon Henry county, the position of the appellant being, as we understand counsel, that the auditor was bound either to allow the claim as audited and allowed by the court to which the change of venue was taken or to reject it wholly, and that upon such rejection by the auditor the only proper remedy of Henry county would be by mandate against the auditor of Randolph county. Counsel, admitting that there are no provisions in the statute for notice to the county from which the venue was changed, concedes that it is not certain how far the auditing and the allowance are binding, and says that these are matters for the auditor to determine, if he choose to refuse to draw his warrant.

It is provided concerning the expenses in criminal causes in which the venue has been changed (§1847 Burns 1901, §1778 R. S. 1881): "In all changes of venue from the county, the county from which the change was taken shall be liable for the expenses and charges of removing,

delivering and keeping the prisoner, and the *per diem* allowance and expenses of the jury trying the cause, and of the whole panel of jurors in attendance during the trial." The next section of the statute provides: "All costs and charges specified in the last preceding section, or coming justly and equitably within its provisions, shall be audited and allowed by the court trying such cause; but where specific fees are allowed by law for any duty or service, no more or other costs shall be allowed therefor than could be legally taxed in the court from which such change was taken."

*Trant* v. *State, ex rel.,* 140 Ind. 414, was a proceeding brought by the board of commissioners of Grant county against the auditor of Blackford county, to collect by writ of mandate from the latter county the expense of the trial of a criminal cause, which originated in Blackford county and on change of venue was tried in Grant county. It was said by the court: "The order of the Grant Circuit Court auditing and allowing the costs and charges of the Sage case against Blackford county, and ordering the auditor of said county to draw a warrant on the treasurer of said county for $2,443.15 was not final or conclusive. Blackford county was not a party to such proceeding, and the appellant may contest the correctness of the allowance made." The court cited the decision in *State, ex rel.,* v. *Snodgrass,* 98 Ind. 546, adopting therefrom the following: "The writ of mandate will issue only where there is a clear legal right to the relief demanded. If the right is doubtful, it must first be established by an ordinary action at law, where the right is such as admits of its establishment in that way. A fiscal officer can not, by mandate, be required to pay a claim where any duty is devolved upon him except the mere ministerial act of making payment. The validity of the claim and the amount due must have been definitely ascertained by some competent officer or tribunal, whose decision, while unappealed from or unreversed, is final and conclusive, before its payment can be enforced by mandate. If the officer,

whose duty it is to make the payment, must himself, at his own risk, inquire into the validity and the amount of the claim, he may not be compelled by mandate to make payment. He may, for his own protection in such case, require an adjudication of the claim before paying it." The court, in *Trant* v. *State, ex rel., supra,* then said: "Under these rules, Grant county must file her claim with the auditor of Blackford county, to be by him presented to the board of county commissioners, as required by" the statute, §7845 Burns 1894, §5758 R. S. 1881. It was also said that so far as the case of *State, ex rel.,* v. *Miller,* 107 Ind. 39, "may be deemed to hold that *mandamus* lies against a county auditor to compel him to draw his warrant to pay the amount allowed by the court under" §§1847, 1848 Burns 1901, §§1778, 1779 R. S. 1881, "the same is overruled." It was also said that the exhibit made a part of the alternative writ and the application therefor showed that some of the items allowed by the Grant Circuit Court were not proper charges against Blackford county; and that it is an established rule that in mandamus proceedings the relator must prove himself entitled substantially to every claim and to all the redress which he seeks in his writ.

In a similar case, *State, ex rel.,* v. *Jamison,* 142 Ind. 679, the court, declining to decide the question as to the validity of the allowance or any part thereof, held that a proceeding for a writ of mandate was not a proper method of seeking reimbursement; that the claim should have been presented to the board of commissioners of the county from which the change of venue was taken. It was said: "To assert the doctrine that a court is authorized, *ex parte,* to make an extraordinary allowance against a county, and enforce the payment thereof, by mandate, through the auditor, without giving it an opportunity to examine into the validity or merits of the claim or allowance, or to contest the same through its own legally constituted agents, in a proper court, would in effect militate against the ancient maxim of juris-

prudence, that every one is entitled to his day in court, and no one shall be condemned unheard."

It is true that while the enactment relating to payment of expenses in changes of venue from the county in criminal cases provides that the costs and charges shall be audited and allowed by the court trying the cause, as does in effect the above mentioned enactment relating to changes of venue in civil cases, the latter also expressly provides that the court to which the civil cause has been changed "shall certify such allowance to the auditor of the county from which the change of venue was first taken; and such auditor shall issue his warrant on the treasurer of the county for the amount so allowed and certified." In *Gill* v. *State, ex rel.,* 72 Ind. 266, 278, it was said that the above quoted provision of the act of 1873 is mandatory and permits of no discretion on the part of the auditor; and that in case of his refusal to draw his warrant and of the issue of an alternative writ of mandate against him to show cause, it is not competent for him to attack the order of the court making the allowance, unless, perhaps, it might be for some cause apparent on the face of the order itself. But in *Barr* v. *State, ex rel.,* 148 Ind. 424, 427, it is said that this case of *Gill* v. *State, ex rel., supra,* "is perhaps overruled by the cases, *Trant* v. *State, ex rel.,* 140 Ind. 414; *State, ex rel.,* v. *Jamison,* 142 Ind. 679." This was said by the judge who wrote the opinion in *Trant* v. *State, ex rel., supra.* See, also, *Monroe* v. *State, ex rel., etc.,* 157 Ind. 45; *Board, etc.,* v. *Pollard,* 17 Ind. App. 470; *Board, etc.,* v. *Board, etc.,* 23 Ind. App. 330.

The statement of account in the case at bar presented to the auditor and filed before the board of commissioners was very general, and without more information than it contained it would be impossible for the auditor to pass upon the correctness of all the allowances. But, aside from the question whether or not it appeared upon the face of the certified account that some or all of the allowances were

not legally chargeable to Randolph county, we are of the opinion that under the authorities neither Randoph county nor its auditor was concluded by the *ex parte* allowance and order of the Henry Circuit Court, and that the course pursued for the examination and allowance or disallowance of the account in whole or in part and for the final adjudication of the claim, was the legitimate and proper practice.

For the due consideration of the conclusions of law discussed by counsel under the third and fourth specifications in the assignment of errors, we state in substance the findings of facts so far as they illustrate the questions argued. On the 21st of September, 1895, in the civil action already mentioned, then pending in the Randolph Circuit Court, the venue was changed to the Henry Circuit Court; and thereupon, as ordered, the clerk of the former court transmitted the proper transcript and papers, which were received by the clerk of the latter court, who duly filed them and docketed the cause, on the 3rd of October, 1895. The finding shows the various steps taken on different days in court, after the date last mentioned, in perfecting the issues and preparing for trial; that one hour was thus taken up on the 30th of November, 1895, the court being in session six hours that day, and the clerk, bailiff, and sheriff being in attendance during the day, for which each of them was paid $2 by Henry county; and on the 5th of February, 1896, one-fourth of a day was so occupied, the clerk, bailiff, and sheriff being in attendance during the day, for which they were each paid $2 by the county.

It was specially found that on the 5th of February, 1896, the defendant in that cause filed in the clerk's office its application for a struck jury to try the cause, and thereupon the Henry Circuit Court ordered the jury commissioners to draw a struck jury, and they accordingly drew a struck jury, and the cause was tried by the struck jury, the defendant in that cause being at the time of filing its demand for a struck jury, and still being, a resident and solvent corpora-

tion of this State; that on the 20th of February, 1896, the trial was begun before a struck jury of twelve men, and four struck jurors were present on that day as required by law who were not used in the trial of the cause; that the trial before the struck jury was continued on the 21st, 24th, 25th, 26th, 27th, and 28th of February and the 2nd and 3rd of March; that the jury trying the cause remained in the jury room deliberating on the verdict a whole night, being the night of March 2nd, 1896; that the trial of the cause occupied nine days, and the struck jury were in their room deliberating on their verdict from 6 o'clock p. m. of March 2nd to 6 o'clock a. m. of March 3rd.

During all of the days of the trial, it was found, the entire time of the court was taken up and occupied with the trial of that cause. On the 13th of March, 1896, a motion for a new trial was filed, and a full day's time of the court was taken and occupied by the argument of counsel thereon, and the court transacted no other business on that day. On the 22nd of June, 1896, the court ruled upon the motion for a new trial and rendered judgment on the verdict of the jury.

It was found that on each and all of said days when any papers or pleadings were filed in said cause, or when the court made any entry or ruling in said cause, aside from said days so occupied in the trial of said cause, the Henry Circuit Court was in regular session and engaged in the regular business of the court, except on March 13th, when it wholly occupied one whole day in hearing arguments on the motion for a new trial; that on all of "said days herein set out" the clerk of said court and the sheriff of said county were in attendance at said court as required by law; that the clerk was acting under the law of 1879 regulating county officers' fees, and not under the fee and salary law of 1895, and the sheriff was upon a salary as fixed and allowed by the law of 1895; that the salary allowed by law to the sheriff was $2,200 per year; that the fees and allowances collected by the sheriff and by him turned into the county treasury for

the year beginning September 1, 1895, and ending September 1, 1896, amounted to $1,818.56; "that there is now due said sheriff from said Henry county more than $1,000 on his salary for the period and term of his office beginning August 23, 1893, and ending August 23, 1897; and that said sheriff failed to collect and turn into the county treasury fees sufficient to pay his said salary for said period of four years."

It was further found that during the progress of the trial of said cause, the members of the regular panel of the jury of said court for that term appeared on three separate days and were thereupon excused by the court without performing any service as jurors, and they were paid out of the treasury of Henry county for their appearance on these three days the sum of $72.

It was next found that the Henry Circuit Court had a duly appointed bailiff, who performed the duties required of him in that court, and who was present and discharged the duties required of him in that court, and who was present and discharged his duties therein during all the time said cause was pending therein and during the trial thereof; and he was also present in that court on every day when there were other proceedings therein; and he was with the jury in said cause one whole night, from 6 o'clock p. m., March 2nd, to 6 o'clock a. m., March 3rd, while the jury were deliberating of their verdict; and he was present on March 13th, when the motion for a new trial was being argued; and he was paid out of the treasury of Henry county for such services the sum of $22.

It was further found that on the first day of the February term, 1896, of the Henry Circuit Court, at which said cause was tried, that court appointed Albert D. Ogborn as shorthand reporter of the court for that term, and he was duly sworn as such reporter, and an order-book entry of the appointment and oath was entered of record in the court, the language of the order being set out in the finding; that dur-

ing said term and for five years prior thereto he was and "now is" the official shorthand reporter of said court, and as such he reports and has reported for five years last past, in shorthand, all causes tried in that court, and as such he reported in shorthand the evidence in said cause, without the request or objection of the parties or either of them; and he was engaged in reporting the evidence in that cause nine days, and was allowed by the Henry Circuit Court $5 per day for this service, $45 in all, which sum was paid to him by Henry county for that service; that the defendant in that cause, in appealing the same to the Supreme Court of Indiana, availed itself of the shorthand notes of the evidence so taken by Ogborn and paid him the fees allowed by law for writing from said notes the longhand manuscript of the evidence in said cause, which was incorporated in the bill of exceptions filed by the defendant in that cause; and that the population of Henry county is less than 70,000, and the legal voters thereof are less than 8,000.

It was further found that on the 3rd of March, 1896, before the judge of the Henry Circuit Court, the sheriff of Henry county certified and presented to that court and the judge thereof an account of the fees due jurors at the February term, 1896, engaged in the trial of said cause, and this account was examined and approved by that court; and the account, including the mileage allowed, is set out by items in the finding, the time credited to each of the twelve jurors, separately named, being ten days. The aggregate *per diem* allowance to each, being $2 per day, was $20, amounting for the twelve jurors to $240, and the mileage computed at ten cents per mile amounted to $8.80. It was found that the court, having examined this account, allowed it and ordered that, upon the issuing of a certificate of the allowance to the auditor of Henry county, the same be paid out of the treasury of that county; and that the sums as set out in the account were paid by that county to the struck jurors for their services in the trial.

It was further found that the struck jurors not used in the trial were allowed by the Henry Circuit Court and paid by Henry county, to one named, $2.40; to another named, $3.65; to another named, $3.00; and to the fourth named, $2.70. Also, it was found that the clerk, sheriff, and bailiff were paid by Henry county for their attendance upon the court during the trial and proceedings in said cause; that on the 7th of July, 1897, "an entry and order and judgment of allowance was made" by the Henry Circuit Court against Randolph county in favor of Henry county, for the expenses and fees incurred and paid by Henry county in consequence of the change of venue of said cause from the Randolph Circuit Court to the Henry Circuit Court; and that the amount of said fees and expenses so allowed is $512; and that it was ordered and adjudged by the Henry Circuit Court that said amount is in all things correct, and that said amount was audited and allowed by said court as a just and proper claim in favor of Henry county against Randolph county, and the auditor of Randolph county was and is ordered and directed by said court to issue his warrant upon the treasurer of Randolph county in favor of Henry county for said fees and expenses.

The court also found that after the trial of said cause and after all the costs were made therein, the clerk of the Henry Circuit Court made a statement of the "costs, time, etc., occupied by said cause in said court," certified to the correctness thereof and to the genuineness of the signature of the judge of said court, which certified account was sent to the auditor of Randolph county, for which he was directed to issue his warrant upon the treasurer of Randolph county in favor of Henry county, for said sum; that the auditor of Randolph county declined so to draw his warrant and referred the claim to the board of commissioners of that county, which board allowed a part of the claim, $175, and disallowed the remainder thereof, from which allowance the board of commissioners of Henry county took an appeal to

the Randolph Circuit Court, and the venue was changed to the Delaware Circuit Court; that the claim and complaint and the statement and cause of action in this case is the same as so made out and certified by the auditor of Henry county to the auditor of Randolph county, and is the same claim as set out in the change of venue record of Henry county, and is a claim for expenses incurred by Henry county against Randolph county in the trial of said cause of Albert F. Huddleston v. Cleveland, etc., R. Co., transferred on change of venue from the Randolph Circuit Court to the Henry Circuit Court, and that Henry county paid the full amount of said claim, to wit, the sum of $512.

We will examine such of the conclusions of law stated by the court as are discussed by the appellant. The third, fourth, and fifth conclusions were, in substance, that Henry county is entitled to recover of and from Randolph county (3) the full amount paid by Henry county to each of the struck jurors engaged in the trial of the cause, including mileage, for nine days' services while engaged in the trial, $224.80; (4) the amount paid by Henry county to the struck jurors for the time they were in their room deliberating of their verdict, from 6 o'clock p. m., March 2nd, to 6 o'clock a. m., March 3rd, 1896, "being one day, $24"; (5) the amount paid by Henry county to the four struck jurors summoned in the cause, for one day's service and mileage, said jurors not being used in said trial, $11.70. These allowances in the third, fourth, and fifth conclusions did not differ in amount from the corresponding allowances made by the Henry Circuit Court.

The practice obtained at common law, in England, of selecting a special jury by striking out names from a list of persons prepared by an officer, under a rule anciently made by the court, upon motion, for the trial of causes of great consequence (2 Tidd's Pr. 788; Proffatt, Jury Trials, §§71, 72), concerning which it was said by Blackstone (3 Blacks. Com. 357), that they were originally introduced in trials

at bar when the causes were of too great nicety for the discussion of ordinary freeholders; or when the sheriff was suspected of partiality, though not upon such apparent cause as to warrant an exception to him. See *Vierling* v. *Stifel Brewing Co.,* 15 Mo. App. 125. The method of selection of the panel, aside from the quality of the persons whose names were listed, was analogous to our method of selection of a struck jury under our statute. A method of selecting a struck jury substantially like that by which the jury here in question was selected was first provided for in this State by a statute of 1861 (Acts 1861, p. 45), 2 Gavin & Hord, 192, which with some modification was adopted into the code of procedure of 1881, §525 *et seq.,* R. S. 1881, and with some further modification was in force when the proceedings in question were had (Acts 1891, p. 376), §534 *et seq.* Burns 1894, §525 *et seq.* Horner 1897). This statute as originally enacted and in all its modified forms has provided that whenever a struck jury shall be deemed necessary for the trial of any civil cause in either of the courts named in the statute, it shall be lawful for either party to file with the clerk a demand therefor. Such demand is sufficient to set in motion the further proceedings for striking the jury. The statute also as originally enacted and since has provided for summoning the sixteen persons selected as jurors struck for the trial of the cause, the day at which it is set for trial being stated in the process; and that upon the trial the jury so struck shall be called as they stand upon the panel, and the first twelve of them who appear and are not challenged for cause, or set aside by the court, shall be the jury, and shall be sworn to try the issue; but that "unless at least one-half of such struck jury shall have been summoned and shall be in attendance when such cause is called for trial the case shall be tried by the regular petit jury as other cases."

The third section of the act of 1861 provided: "That the party requiring such struck jury shall pay the fees for

striking the same, and $1.25 each day for each juror so attending, and shall not have any allowance therefor in the taxation of costs, unless the court shall be of opinion that the cause required such special jury, in which last case the extraordinary expense shall be taxed in the bill of costs." In the code of 1881, as still in force, ·this section (being §536 Burns 1901, §527 R. S. 1881) is the same as in the act of 1861 with the addition of the following: "If the court, upon motion of either party, shall have ordered a struck jury, then the costs thereof shall abide the event of the suit."

There is much disagreement in the profession as to the proper construction of the statute and much diversity of practice in the application of the provisions quoted above as to the payment of the expenses of such a jury, designated in the statute as a "struck jury" and as a "special jury," and expressly distinguished therein from a "regular petit jury," whose jurors, at the time of the enactment of the statute of 1861, were entitled to $1.25 for each day for their services, and four cents for each mile traveled, such compensation to be paid out of the county treasury upon the order of the court. 2 Gavin & Hord 31, §4; 1 Gavin & Hord 337, §16. At the same time it was provided (2 Gavin & Hord 31, §5), that in every case tried by a jury in the circuit or common pleas court, the clerk, as a part of the cost of proceeding, should tax a jury fee of $4.50 against the losing party.

At the time the special jury here in question served, it was provided by statute that in causes tried by jury, a jury fee of $4.50 should be taxed as costs in favor of the county, to be paid by the losing party; and that jurors, grand and petit, should be paid $2 per day while' in actual attendance, and five cents for each mile necessarily traveled. (§1459 Burns 1901, §1394 R. S. 1881, Acts 1895, p. 342-3, §7449 Horner 1897); and it was provided (Acts 1895, p. 341, §7449 Horner 1897): "The allowance and

the order for the payment thereof out of the county treasury made by the court to grand [and] petit jurors in attendance during any term of court for their *per diem* and mileage fees shall be entered on the order-book," etc.

In 2 Tidd's Pr. 792, it is said: "It was formerly holden that the fees for striking a special jury should be paid by the party applying for it; but that the other expenses of the trial should abide the event of the suit. But now, by the statute 6 Geo. IV., c. 50, 'the person or party who shall apply for a special jury, shall pay the fees for *striking* such jury, and all the expenses occasioned by the trial of the cause by the same; and shall not have any further or other allowance for the same, upon taxation of costs, than such person or party would be entitled unto, in case the cause had been tried by a common jury; unless the judge, before whom the cause is tried, shall, immediately after the verdict, certify, under his hand, upon the back of the record, that the same was a cause proper to be tried by a special jury.' And, by the same statute, 'no juror, who shall serve upon any special jury, shall be allowed or take, for serving on any such jury, more than such sum of money as the judge who tries the issue shall think just and reasonable, and which shall not exceed the sum of one pound one shilling, except in causes wherein a view is directed and shall have been had by such juror.' "

In *Wright* v. *Wilmington City R. Co.*, 2 Marv. (Del.) 141, 42 Atl. 440, where there was a nonsuit, the cause not having been tried fully upon the merits, the defendant, who had asked for the special jury, moved that the costs of the special jury be taxed upon the plaintiff. In refusing the motion, the court said: "Before the expenses of a special jury could be taxed as costs at all, this court would have to decide under the statute, that it was a case proper to be tried by a special jury. * * * Special juries are luxuries which the parties may indulge in at their own risk, but the court will not tax the expense thereof against the

adverse party, unless the circumstances of the case are such as to show practically that the process of the court had been abused or prostituted in the bringing of the suit."

In *Dunn* v. *N. & C. R. Co.,* 50 Tenn. (3 Bax.), 415, the court had under consideration the section of the code providing that, "on motion of either party in any civil action, a special jury may be ordered and summoned, if, in the opinion of the court, it is proper, the additional costs to be taxed to the losing party." The defendant, being the losing party, insisted that "the additional costs" meant only the costs of summoning the special jury, or if anything more than this, it could only be to pay off the special jurors during the time the regular panel was in attendance and on pay; but the court decided that the meaning was to tax the entire costs of the special jury to the losing party.

In *Lommen* v. *Minneapolis Gaslight Co.,* 65 Minn. 196, 68 N. W. 53, 33 L. R. A. 437, 60 Am. St. 450, the court had under consideration a statute providing for struck juries, the manner of selecting the panel being substantially like our statute, and it being provided that the party demanding the struck jury is required to pay the fees for striking the same, and the mileage and *per diem* of the jurors, and shall not have any allowance therefor in the taxation of costs. It being objected that the act was in violation of the constitutional provision that every one "ought to obtain justice freely and without purchase," the court held that there was no merit in this objection, saying, in part, that this provision of the constitution had a well known historical meaning and was aimed against the corrupt practice of taking bribes and exacting illegal fees, and never meant that a litigant should have the right to conduct his suit in court without cost. See, also, *Vierling* v. *Stifel Brewing Co.,* 15 Mo. App. 125.

In *May* v. *Hoover,* 112 Ind. 455, the court having before it the question whether the provisions of §531 R. S. 1881, being §365 of the code of 1881, that in all cases where the

jury consists, of six or more persons, each party shall have three peremptory challenges, being a reënactment of a portion of §313 of the code of 1852, conferred the right to peremptorily challenge struck jurors, said: "At the time the code of 1852 was adopted, and for nine years thereafter, that section had relation to ordinary juries, and not to struck juries, because, until 1861, struck juries were unknown in our practice. In 1861 (Acts 1861, p. 45), 2 R. S. 1876, p. 159, an act authorizing struck juries was passed. That act of four sections was substantially the same as §§525, 526, 527, 528 of the present code, R. S. 1881. The act of 1861 was thus reënacted into the code of 1881 as a part of it. It is reasonable to presume that, in thus reenacting that act into the code of 1881, the legislature did so upon the assumption that, as a part of that code, it should be construed, as it should have been while it stood alone, as a separate act. As a separate act, of subsequent date to the code of 1852, which provided for challenges of jurors, its proper construction, doubtless, should have been, had the question been raised, that it not only did not provide for peremptory challenges of struck jurors, but impliedly denied that right."

Thus, the court regarded the struck jury as an exotic planted in our system of practice and transplanted into the civil code of 1881, retaining there its original characteristics not affected by the general provisions relating to ordinary petit juries. While in 1881 a method was adopted for the selection by jury commissioners of names for grand and petit jurors, to be drawn from the box by the clerk (Acts 1881, s. s. 557, §1385 R. S. 1881), the method whereby the list for the striking of the special or struck jury was prepared by the clerk (§525 R. S. 1881) continued in use, and the provision therefor was not amended until 1891 (Acts 1891, p. 376, §534 Burns 1894), when a mode of selection by the jury commissioners of qualified persons, preparatory to the striking off of names, was adopted. The provisions

of the code relating to struck juries, it is thus observed, do not modify and are not affected by the general provisions of law relating to common juries.

The amount of the compensation of jurors was changed from time to time after the enactment of the statute relating to struck juries. Thus, in 1869 (Acts 1869, s. s. 81), it was enacted that the compensation should be $2 per day, to be paid out of the county treasury, and four cents for each mile traveled, to be paid by the county. In the fee and salary law of 1871 (Acts 1871, pp. 28, 29, §9), the compensation was made $2.50 per day, to be paid out of the county treasury, and five cents for each mile traveled, to be paid by the county. In the fee and salary law of 1873, the same compensation was provided for as in that of 1871 (Acts 1873, p. 132, §18). In the fee and salary law of 1875 (Acts 1875, s. s. 44, §25), the fees of jurors were made $2 per day, while in actual attendance, and for each mile traveled five cents. The fee and salary law of 1879 (Acts 1879, p. 142, §34) provided that the fees should be $1.60 per day and five cents for each mile traveled. In 1881 at the same session at which the civil code of 1881, with its provisions concerning struck juries, was enacted, §34 of the fee and salary law of 1879 was amended so as to make the fees $2 per day and five cents for each mile traveled (Acts 1881, s. s. 503-4); and at the same session, in an act providing for the appointment of jury commissioners entitled "An act concerning grand and petit juries", it was enacted in §10, as above already stated, that in causes tried by jury, a jury fee of $4.50 shall be taxed in favor of the county; and that jurors, grand and petit, shall be paid $2 per day while in actual attendance, and five cents for each mile necessarily traveled. Acts 1881, s. s. 559, §10, §1459 Burns 1901, §1394 R. S. 1881.

During all the period of making these statutory changes, no change was made in the amount of the compensation of struck jurors as originally fixed in 1861, though the statute

at various times was otherwise modified, included in the changes being an addition in 1881 to the section relating to compensation. When the legislature drafted our statute relating to struck juries, it manifestly had in view the historical aspect of special or struck juries in England and in this country, and intended the provisions of our statute similar to the precedents to have like effect.

It must be concluded, we think, that in the various statutes enacted in our State from time to time concerning the compensation of jurors, other than the statute relating to struck juries, the purpose of the legislature was directed to common juries, ordinary juries, and not to struck juries. Giving the language of the statute its legitimate meaning and force, it is manifest that a struck jury is a special privilege of a party to an action, for which he must pay the fees for striking it, and something more. He must pay $1.25 each day to each one of the sixteen members of the panel in attendance at court as a struck juror. For the money so paid he shall not have any allowance in the taxation of costs, unless the court (where it has not itself ordered a struck jury) shall indicate an opinion that the cause required a struck jury, in which case the extraordinary expense which he has been at in making such payment shall be taxed in the bill of costs. In the provision inserted in 1881, that the costs of the struck jury shall abide the event of the suit if the jury was ordered by the court upon motion, there seems to be a statutory recognition of the common law method of obtaining this kind of special jury.

The party requiring the struck jury must pay as the service is rendered, and there is no means provided for his reimbursement except by way of recovery thereof as costs from the adverse party as indicated in the statute. Each struck juror must be paid $1.25 each day of his attendance by the party requiring such jury, not by the county, and there is no obligation upon the county to repay this sum to the party requiring the struck jury. It can not be re-

garded as within the purpose of the legislature, in any of its enactments, that struck jurors, in addition to the compensation thus provided absolutely from a party to the action, should also receive from the county the compensation provided by law for the jurors of a common jury. If such a purpose could be presumed, the struck juror in 1861 would have received twice as large a fee *per diem* as that provided then for a common juror, and the struck jurors whose compensation is here under review would each have been entitled *per diem* to $3.25.

With the policy of the law, whether good or bad, in any of its provisions, this court can not legitimately concern itself. Our duty is merely to construe the legislative enactments involved. If it be thought that the jurors of a struck jury should receive the same compensation as that provided for common jurors or a greater compensation, the legislature can easily indicate its intention to such effect, which it has not done. A party who can not or will not pay for this special jury must do without it. The struck jurors can not properly be paid by the county. There are questions of importance connected with the subject with which we need not deal until they arise. This somewhat lengthy discussion leads to the determination that in its third, fourth, and fifth conclusions of law the court below was wholly in error.

The sixth conclusion of law was to the effect that Henry county was entitled to recover from Randolph county the amount paid to Mr. Ogborn, the reporter, $45.

The statute of 1873 relating to shorthand reporters (Acts 1873, p. 144, 1 R. S. 1876, p. 769) made no provision for the compensation of the reporter by the county, but by its express terms it contemplated his employment by the parties or one of them. See *Galvin* v. *State, ex rel.,* 56 Ind. 51. That statute, therefore, has no application to the question here involved. The next enactment on the subject of shorthand reporters was in 1875 (Acts 1875, p. 137, 1 R. S.

1876, p. 770). The title of this statute was as follows: "An act authorizing the appointment of shorthand reporters for certain courts of record in this State, in counties containing a population of 70,000, or more, and prescribing the duties and compensation of such reporters." The first section of this statute was amended in 1877 (Acts 1877, p. 127), and again in 1881 (Acts 1881, s. s. 599; §1405 R. S. 1881), and again in 1895 (Acts 1895, p. 228, §1405 Horner 1897). The fifth section of the act of 1875, relating to the compensation of the reporter for the time employed in court in taking testimony, was amended in 1885 (Acts 1885, p. 128, §1475 Burns 1894, §1409 Horner 1897). If there was any authority for the payment of the reporter by the county, it was conferred by the act of 1875 and its amendments.

In *Smith* v. *State,* 145 Ind. 176, and in *Beatty* v. *Miller,* 146 Ind. 231, it was very clearly intimated that the several sections of the act of 1875 and the amendments thereto were invalid, as being in violation of the provision of the constitution forbidding local or special laws regulating the practice in courts of justice. In the latter case, decided in 1896, it was said that the act of 1873 above mentioned was "apparently the only law in existence authorizing the use of the original longhand manuscript of the evidence in a trial taken down by a shorthand reporter"; and in the former case, the appellant having taken the position that the act of 1875 had no application to a cause tried in a county whose population was less than 70,000, the court said: "It must be admitted that the position assumed by counsel would seem to be well taken, and that the act of March 10, 1875, could apply only in the courts of counties having 70,000 inhabitants or more."

The amendments in 1881 and 1895 of §1 of the act of 1875, purported by their terms to authorize the appointment of reporters in the courts of each and every county of the State. In *Walsh* v. *State, ex rel.,* 142 Ind. 357, 33

Board, etc., *v.* Board, etc.

L. R. A. 392, it was said: "It is evident and undisputed, that where a statute or any part thereof, is invalid by reason of an absence of power in the legislature, in the first instance, under the Constitution to enact the law, it would not be possible for that body to confirm or render the same valid by amendment. But where the obnoxious features of the statute may be removed, or essential ones supplied by a proper amendment, so that it can be held that had the law been primarily so moulded or framed under its title and within its scope, as it has been by the amendment thereto, it would have been free of the objections existing against it, as it originally stood, and also within the power of the legislature to enact it, then and in that event, the statute may be rendered valid by amendment, so far as its future operations may extend." It was also said: "A statute, amending a former act, operates as to matters thereafter occurring precisely as if the amendatory act had been added to the original act at the time of its adoption, and the two acts must be construed together, as one statute."

From the date of the amendment of a statute, valid in part and capable of being amended, the amended statute is to be construed as if it had read from the beginning as it does with the amendment incorporated in it. *Meer* v. *Board, etc.,* 26 Ind. App. 85; *Pomeroy* v. *Beach,* 149 Ind. 511.

Where importance attaches to the title of a statute, as it does under our constitutional provision relating to the title of an act, the enacting clause must be construed in connection with the title and can have no effect beyond the subject expressed in the title.

Without regard to the question as to the constitutional validity of the statute of 1875, with its various amendments incorporated into it, when applied to a county having the number of inhabitants designated in the title, we, in construing the whole act, including its title, must hold that none

of its provisions can be regarded properly as applicable to Henry county, having a population less in number than that mentioned in the title of the statute; and we must regard the allowance of the shorthand reporter out of the county treasury of Henry county as unauthorized, and the charge against Randolph county for that item of expense, therefore, can not be sustained.

The seventh conclusion of law was, that Henry county was entited to recover from Randolph county the amount paid by the former to the regular panel of jurors in waiting and present three days during the trial of the cause, $72. The statute already noticed, §418 Burns 1901, §414 R. S. 1881, provides expressly that the county from which the change of venue is taken shall be liable to pay to the county to which it is taken, in all cases, "the fees paid by such county to   *   *   *   any of the regular panel not engaged in such trial," etc.

Though the cause was set down for trial on a day certain, it could not be known that it would go to trial on that day; and if it should go to trial on that day, unless at least one-half of the struck jury should be summoned and be in attendance when the cause was called for trial, it would, under the provisions of the statute, be tried by "the regular petit jury as other cases are tried." And if the cause should go to trial on that day before the struck jury, the circumstances, so far as known to the judge, might not clearly indicate, either on that day or on subsequent days, how long the trial would probably continue. Though causes to be tried before a struck jury ought to be so set for trial as, if convenient for the due dispatch of business, to prevent the accumulation of expenses for the regular panel, the matter must necessarily be within the discretion of the court; and if the court's action be subject to review on appeal, there is nothing here to show any abuse of discretion. We find no error in this conclusion of law.

In the eighth, ninth, and tenth conclusions of law, the

court held that Henry county was entitled to recover from Randolph county the amounts paid by the latter to the clerk, sheriff, and bailiff for their attendance upon the court nine days during the trial of the cause and one day when the motion for a new trial was argued, $20 each. In the twelfth, thirteenth, and fourteenth conclusions, the court favored allowances for one-sixth of the amounts paid to the clerk, sheriff, and bailiff for their attendance on the day on which it was specially found, as above stated, that the court was engaged upon the case in question for that portion of the time of the court's session, thirty-three cents for each of said persons. In the fifteenth, sixteenth, and seventeenth conclusions like allowances for amounts paid for the attendance for one-fourth of a day of the clerk, sheriff, and bailiff, as specially found, were favored, fifty cents for each of said persons.

The statute upon which are based the allowances against the county from which the venue was changed renders that county liable for all such expenses as were incurred by the county to which the change was taken "in consequence of such change, * * * allowance to bailiffs, and all other expenses necessarily incurred by such county, and consequent upon such change of venue and the trial of such cause." We are of the opinion that these allowances to the clerk, sheriff, and bailiff were necessary expenses incurred by Henry county within the meaning of the statute. The fee and salary law of 1879 as supplemented in 1883 (Acts 1879, p. 130, §19, §5857 R. S. 1881; Acts 1883, p. 48, §8, §1976 Elliott's Supp.), under which the clerk of Henry county was serving, authorized the allowance of $2 per day to the clerk. The fee and salary law of 1895 (Acts 1895, p. 354, §122, §7456 Horner 1897) provides that "the pay of the court bailiffs shall be fixed by the court, and shall not exceed, to be paid by the county per day, $2." The same section of the act of 1895, under which the sheriff of Henry county was found to be serving, provides

that the sheriffs of the various counties of the State shall tax and charge for attending court, in person or by deputy, for each actual day's attendance, to be paid by the county, $2. We can scarcely take space further to recite the various provisions of the statute of 1895 relating to the fees and salary of sheriffs.

We need not determine, in this case, whether the sums thus to be taxed and charged by the sheriff for attending upon the court should be held and treated as part of the emoluments of his office additional to the annual salary provided for the sheriff in that statute, or should be held and treated as fees to be accounted for by the sheriff to the county, the amount thereof to be included in his expressly designated quarterly allowance of salary, as part thereof. If the former view be taken of such allowances for attendance, it is clear that they constitute necessary expenses of the county to which the change of venue has been taken, incurred on account of such change.

If these allowances for attendance constitute part of the collected fees of the sheriff which under the statute go to make up the amount of salary paid him by the county, then this sheriff's actual salary, but for the fees thus earned by him, would not have been as large as it was by amount of such allowances; that is, the county by way of salary would have paid him as much less as his fees for attendance amounted to, if it had not paid him for attendance when this cause occupied the court. The fees and every portion of each fee which went to make up the amount of his salary, and other fees which might in the future go to increase the amount of his actual salary, or which would be in excess of his salary and therefore would be retained by the county, were and would be fees to which the county was or would be entitled upon their own account in its own right. In receiving each and all of such fees the county is receiving its own, and so far as it pays the amount thereof back to the officer by way of salary it is paying fees earned for it by the officer.

If after the expiration of his term of office (during which the sheriff did not receive his full statutory salary by reason of the smallness of the amount of his fees collected), a sufficient amount of his fees should be collected to exceed the statutory amount of his salary when added to the amount of salary actually received by him while in office (a supposition which is not shown to have a sufficient basis in fact), such additional collections, in any view of the matter, would come from individuals or corporations other than the county, and no portion thereof would accrue to the county by way of repayment from the sheriff of any portion of the salary actually paid him; but such additional collections would come to the county, each in virtue of a distinct right of the county upon a separate account in favor of the county against a particular person or corporation, and each such payment to the county would be the discharge of a distinct claim of the county in truth, though the fees would be collected nominally as "sheriff's costs."

During the whole days and during the definite parts of a day's session, while the cause from Randolph county was occupying the time of the court of Henry county, the latter county was at the expense of $2 per day for the attendance of its sheriff upon the court. To the extent to which that expense was attributable to the cause in question, it was an expense for which Henry county was entitled to reimbursement from Randolph county.

In the nineteenth, twentieth, and twenty-first conclusions, the court approved allowances for one-tenth of the *per diem* paid to the clerk, sheriff, and bailiff by Henry county for attendance upon the court on ten specified days, on which the finding of facts showed the docketing of the cause, the filing of papers, the making of orders by the court and the entry thereof of record, being $2 as to each of such officers. The court in its finding of facts specially found that these officers were in attendance on all the days when these proceedings were had, but it did not state as a

finding of fact that the one-tenth part of all or each or any of those days, or any specified time or portion of a day, was consumed by such proceedings. There was therefore no sufficient basis for these conclusions of law, or any of them. So, as to the eighteenth conclusion that Henry county was entitled to recover the amount paid by that county to the clerk "for order-book entries, for certified copies of orders of allowance to auditor of Henry county, to auditor of Randolph county, indexes, and all entries and papers concerning said expenses of said trial, $1.50", we do not observe sufficient facts in the special finding on which to base the conclusion.

In the eleventh conclusion the court favored the allowance of the amount paid by Henry county to the bailiff for his attendance and waiting upon the jury while deliberating of their verdict in their room, "from 6 o'clock p. m., March 2nd, to 6 o'clock a. m., March 3rd, being one day, $2." This allowance was wholly unauthorized. The bailiff was allowed for his attendance on March 2nd and on March 3rd, in another conclusion which we have approved. The statute limiting the allowance to the bailiff to $2 per day contemplates calendar days, each of which is twenty-four hours long. For any and all service performed during a calendar day he can be allowed no more than the *per diem* compensation so provided. A like question was decided in an appeal from the court from which the case at bar comes, *Monroe* v. *State, ex rel.,* 157 Ind. 45.

It follows from what we have said that the twenty-second conclusion of law, to the effect that the appellee was entitled to recover from the appellant in this action the sum of $449.50, can not be sustained.

The judgment is reversed, and the cause is remanded with instruction to restate conclusions of law not inconsistent with the foregoing opinion.