## PFISTERER *v.* KEY

[No. 27,543.   Filed April 15, 1941.   Rehearing denied May 19, 1941.]

Robert D. Markel and Wilbur S. Furlow, both of Evansville, for appellant.

Sanford Trippet, T. Morton McDonald and Douglas H. McDonald, all of Princeton, for appellee.

ROLL, J.—This action was brought by appellee, the father, to recover for the alleged wrongful death of his son. From a judgment in favor of appellee, appellant appeals.

The basic facts resulting in the almost instant death of appellee's son are not in dispute. Only two persons witnessed the accident, the appellant, and his friend who was riding with him in the automobile. The following facts are disclosed by interrogatories and answers thereto, and the testimony given by the two eyewitnesses, and are in substance, as follows:

On June 21, 1936, about 7:30 o'clock in the evening, appellant was on his way to his home in Evansville, Indiana, and passed through the town of Patoka, and proceeded southward on U. S. Highway No. 41, at the rate of about 45 miles per hour. The lights on his 1936 Plymouth Coach were burning, but the jury found that it was dusk, but he could see plainly. The weather was

fair. There was a curve in the highway just south of the town of Patoka, but from the curve southward the highway was level and straight for about 930 feet to the scene of the accident, and south of the scene of the accident for a distance of about one-third of a mile. The cement portion of the highway was 18 feet wide with a gravel shoulder on either side three feet in width, flanked by grass on each side. Appellee's son, a boy 15 years and nine months old, was walking northward on the pavement two or three feet from the west edge, leaving at least 15 feet of the pavement to the right of him for other traffic. There was no other traffic on the highway within sight of the scene of the accident. The boy had finished his first year in high school; his hearing, his eye sight with glasses, were normal; he was wearing a dark suit; he lived about 60 rods from the highway, and was familiar with the use and traffic on the highway. There was nothing on the highway to obstruct his view of approaching vehicles for a third of a mile northward, and nothing to have prevented him from hearing the approach of automobiles had he listened.

The undisputed evidence shows that appellant's companion saw the boy when he turned the curve immediately south of the town of Patoka, but said nothing to appellant, and did not see the boy thereafter, as he was looking out of the window, until immediately prior to the accident. Appellant was driving on the right-hand side of the highway and did not see appellee's son until the front of the car was within 15 to 20 feet of him, at which time the boy was walking with his head downward, and appellant testified that he did not think the boy saw or heard the approach of the car. At that time there was insufficient time to sound the horn or give other signal, but appellant swerved his car to the

left in an attempt to avoid striking the boy, but the right front fender came in contact with him, and the impact threw the boy against the rear part of the right door, causing instant death.

Appellant testified that he stopped his car on the west side of the road about 87 paces south of the place of collision. The jury found, in answer to interrogatories, that after appellant saw decedent he could have reasonably slowed, but not stopped, his car in time to avoid the collision, and that appellant also could have reasonably turned his car more and avoided hitting decedent.

Upon these facts appellant contends that appellee's son was guilty of contributory negligence as a matter of law, and that the judgment should be reversed, with instructions to enter judgment for appellant on answers to the interorgatories, notwithstanding the general verdict.

Appellee says that the above facts present a mixed question of law and fact, and therefore is a proper question for the jury; and further contends that even though his said son was negligent, nevertheless the general verdict should not be disturbed because the answers made by the jury to the interrogatories show that appellant had the last clear chance to avoid the collision.

The principles of law governing questions presented herein are not new, or complex. We have, however, had considerable difficulty in the application of these principles in determining whether or not the facts here presented show contributory negligence on the part of appellee's son, as a matter of law. So it is in the application of well-established rules and principles to the facts, that has given the court some concern.

It is clear, we think, that appellee's son had a legal right to walk on the left side of the highway, facing oncoming traffic; and, under the law of the road, ■ appellant was also expected to drive on the west or right-hand side of the pavement. Even at common law, both appellee's son, and appellant, were under the duty of exercising ordinary care under the circumstances.

The rights and duties of appellee's son are clearly defined in the following cases: *Indianapolis Traction Co.* v. *Kidd* (1906), 167 Ind. 402, 407, 79 N. E. 347; *Fishman* v. *Eads* (1929), 90 Ind. App. 137, 168 N. E. 495. Quoting from *Raymond* v. *Hill* (1914), 168 Cal. 473, 143 P. 743; *Lindloff* v. *Duecker* (1933), 217 Iowa 326, 251 N. W. 698; *Korstange* v. *Kroeze* (1933), 261 Mich. 298, 246 N. W. 127.

Appellant's duty in some respects has been defined by statute. Acts of 1925, ch. 213, § 36, p. 570, § 47-513, Burns' 1940 Replacement, § 11166, Baldwin's 1934, provides:

> "In approaching a pedestrian who is walking or standing upon the traveled part of any highway, and not upon a sidewalk . . . every person driving or operating a motor vehicle . . . shall slow down and give a timely signal with the bell or horn or other device for signaling."

By the provisions of the above statute, the duty to slow down, to give warning upon approaching pedestrians, is enjoined upon the driver of an automobile. ■ bile. The warning is for the purpose of giving the pedestrian an opportunity to protect himself. See *Croatian Bros. Packing Co.* v. *Rice* (1928), 88 Ind. App. 126, 147 N. E. 288. We think it also might be construed as a notice to the pedestrian that the driver intends to use that part of the highway on which the pedestrian is walking. The duty to slow down is en-

joined upon drivers of automobiles, perhaps to the end that the driver may change the course of his automobile in time to avoid a collision, if the pedestrian does not heed the warning.

Under the circumstances here presented, appellant was not required to use the right side of the pavement, for the reason that at least 15 feet of the pavement to the east was available for his use, as there was no other traffic on the highway at the time. If a car had been approaching appellant from the south at the time appellant's car approached appellee's son, a different question would be presented. But here the road was free from any traffic whatsoever, save and except appellee's son, and appellant's automobile.

There is no question presented in this case as to the negligence of appellant. Therefore, we are not concerned with his conduct, as it might affect his negligence, but, nevertheless, the conduct of appellant as he approached appellee's son, must be considered as affecting decedent's conduct.

In determining whether or not appellee's son was guilty of negligence contributing to his own injury, his actions must be considered in the light of the conduct of appellant as he approached appellee's son. There was no evidence in the case as to whether or not appellee's son saw or heard the approach of appellant's car. But since the evidence discloses that there was no obstruction between appellee's son and the approaching car that would have prevented said son, by the exercise of ordinary care, from seeing the car as it approached, the jury had a right to infer that appellee's son did see and did hear the car approaching.

It has been many times said that it is negligence to fail to see or hear that which you could see or hear,

by the exercise of ordinary and reasonable care, and for that reason the law attaches the same legal consequences for not seeing or hearing as it does if in fact you did see and hear. However, negligence must be proven, and in the absence of some proof of negligence, the jury would not be justified in inferring negligence. While the evidence was to the effect that appellant did not in fact see appellee's son, yet appellee's son did not know that appellant did not see him. Therefore, as heretofore pointed out, appellee's son had a right to assume that appellant did see him, and it was not negligence per se on his part to act upon that assumption. Consequently, we cannot say, as a matter of law, that appellee's son was guilty of negligence in continuing his direct course on the assumption that appellant saw him and would exercise ordinary care toward him, and that appellant would be mindful of the duties imposed upon him by the abovementioned statute.

While it may be true that the sound of a horn was unnecessary to warn appellee's son of the approach of the car, the fact that the horn was not sounded might have indicated to appellee's son that the appellant would not insist on pursuing his direct course, but would sufficiently swerve to the left upon the nonoccupied part of the highway, and thus avoid a collision.

Therefore, until appellee's son had some notice to the contrary, it may reasonably be said that the conduct of the decedent in maintaining his course was that of an ordinary, prudent person under the circumstances. This view finds support in the following authorities: 1 Berry on Automobiles (6th Ed.), § 352, page 311; *Indianapolis Traction Co.* v. *Kidd, supra, Lewis* v. *Seattle Taxicab Co.* (1913), 72 Wash. 320, 130 P. 341.

It is apparent, therefore, the difficulty is in determining at what time the decisive moment occurs for the pedestrian to act. As stated above, appellant had a right to assume that the pedestrian would exercise ordinary care and at the proper time would step from the pathway of the car, if necessary, to avoid injury. In cases of this kind there is a period of time as the parties approach each other, when it may be said, as a matter of law, that neither party is guilty of negligence, and on the other hand a later period when it may be said, as a matter of law, that both parties are negligent. But between these extremes there is a twilight zone where reasonable minds may differ upon the question of negligence. When the facts are such as to bring the issues within this twilight zone, the question of negligence, or contributory negligence, is a mixed question of law and fact, and is a proper question to present to a jury. We think this is such a case. In adopting this view of the case, the general verdict can stand upon the theory that the jury, by its general verdict, determined that appellee's son was not guilty of contributory negligence, and that appellant was negligent, and that his negligence was the proximate cause of the injury.

We must give effect to the verdict of the jury, if it can be sustained on any theory presented by the issues. So it is unnecessary to determine whether it may also be sustained, by the application of the doctrine of "last clear chance."

The doctrine of last clear chance is discussed at length in the briefs, and no doubt occasioned much argument in the making of the issues. Appellant filed a motion to separate into paragraphs, a motion to strike out, a motion to make more specific, and a demurrer, all of which were overruled. It was urged that each

paragraph proceeded upon the theory of willful injury, negligence, and last clear chance.

We find no allegations that would justify a conclusion that appellee predicated his cause of action upon a willful injury. Both paragraphs, and particularly the second, stated the essential facts as herein set out. Negligence on the part of appellee's son was not admitted in either paragraph of the complaint, and, therefore, the doctrine of last clear chance was not specifically pleaded. The doctrine of last clear chance, generally speaking, is not a doctrine of pleading, but a doctrine of evidence. *Union Traction Co.* v. *Bowen* (1915), 57 Ind. App. 661, 103 N. E. 1096; *Indianapolis, etc., Traction Co.* v. *Senour, Admx.* (1919), 71 Ind. App. 10, 122 N. E. 772; *City of Michigan City* v. *Werner* (1916), 186 Ind. 149, 114 N. E. 636; *Indianapolis Street Railway Co.* v. *Marschke* (1906), 166 Ind. 490, 77 N. E. 945.

But under the above authorities we think it clear that the allegations in the complaint were sufficiently broad to admit evidence as to the doctrine of last clear chance.

There were charges in the complaint that appellant failed to keep a lookout ahead to discover if the boy was aware of his peril; that appellant failed to give warning of his approach, and failed to slow down so as to prevent injuring the boy; and it is charged that the appellant, after seeing the boy walking with his head down, "carelessly and negligently and with great force and violence directed and drove his automobile upon and against the boy, inflicting mortal injuries."

It is our view that there was no error in overruling the various motions above mentioned, or in overruling

the demurrer to the complaint. It cannot be said that appellant was misled as to the charges he would have to meet at the trial, for all of the material facts proved, other than the question of damages, were within his own knowledge as one of the eyewitnesses to the accident, and we think the facts were sufficiently alleged in the complaint to state a cause of action.

One of the errors relied upon was that the appellant was denied a struck jury. The record shows that after the case was assigned for trial, appellant filed a request for a struck jury. The jury was drawn, and summons were placed in the hands of the sheriff for service upon each member thereof. The sheriff refused to serve the summons for the reason that appellant did not deposit or offer to pay the members thereof, as provided by § 4-3315, Burns' 1933, § 335, Baldwin's 1934.

We are of the opinion that appellant is in no position to urge this error, for it was determined in the case of *Board, etc.* v. *Board, etc.* (1901), 27 Ind. App. 378, 61 N. E. 612, that a party who cannot or will not pay for this special jury must do without it. Under the provisions of the above statute, and the decision in the case above referred to, we hold that there was no available error in refusing a struck jury.

Appellant makes complaint of instruction No. 6, given by the court on its own motion. This instruction reads as follows:

"One who operates an automobile upon a public highway is bound to constantly observe the highway in front of him so as to discover other vehicles or pedestrians thereon, and avoid colliding therewith, and to keep his automobile under such control that he may readily operate or stop the same to avoid a collision and possible injury to other persons. He is bound to see what he could have seen if he had exercised due care under the cir-

cumstances, and, if, in this case, you find that the defendant could have seen the plaintiff's decedent, with which he collided, in time to have so operated his automobile, or to have stopped the same, in time to have avoided a collision with the decedent, by the exercise of due care and caution, required by the particular circumstances, and you also find that he did so collide with plaintiff's decedent, then he was negligent in so operating his automobile to cause such collision."

In support of his contention he cites and relies upon *Martin* v. *Lilly* (1919), 188 Ind. 139, 121 N. E. 443; *Lauer* v. *Roberts* (1934), 99 Ind. App. 216, 192 N. E. 101, and four other cases.

The *Martin* v. *Lilly* case was decided before the statute above referred to was enacted by the 1925 Legislature, and the duties imposed upon the drivers of motor vehicles by the provisions of that statute were not involved. For that reason the case is not controlling in this case. Neither is the case of *Lauer* v. *Roberts, supra,* in point, because in that case there was evidence that the pedestrian came suddenly from in front of a street car and either stepped in front of the automobile or ran into the side of it. The duty of a driver of an automobile to discover pedestrians on the highway, and have his automobile under control so as to avoid collision with them as stated in the instruction has no application to cases where a pedestrian suddenly steps out from behind another car or other obstruction into the path of an oncoming car. So for that reason the Lauer case is not decisive. The other cases cited are also distinguishable. Appellant says that by the use of the words "constantly observe" the jury was told that appellant must keep his eyes constantly on the roadway while he was driving. Webster defines the verb "observe" as, to take notice; to be attentive, and the word "constant" as continually re-

curring, regular, steady, and the word "constantly" as in a constant manner, uniformly, continuously. So the phrase "constantly observe the highway" would mean, literally, to continually or regularly pay attention to the highway. We think the statute above referred to does make it the duty of a driver of an automobile to regularly and continuously pay attention to the highway. To be sure, looking to the right or to the left to see if another vehicle or any other object was about to come on the highway from either side would be observing the highway. But we can understand how the jury might get a more narrow view from the wording of the instructions, and for that reason we could not approve it as a model instruction.

But even though the instruction could be said to be erroneous, we think it harmless for the reason that under the evidence and the other facts as found by the jury as disclosed by their answers to interrogatories, the jury could have reached no other conclusion than that appellant himself was guilty of negligence. Since from the undisputed evidence appearing in the record, the trial court could have instructed to the effect that appellant was guilty of negligence, erroneous instruction to the jury as to the duty of appellant could not have been harmful. We, therefore, find no reversible error in giving this instruction.

Appellant says the court's instruction No. 11 was erroneous. This instruction told the jury that if it found that the defendant was guilty of any of the acts of negligence charged in the complaint and that by reason thereof plaintiff's decedent was suddenly and unexpectedly placed in a position of great apparent danger, this was a probable circumstance for it to consider in respect to his own conduct. The instruction then instructed the jury, correctly we

think, that if plaintiff's decedent acted as an ordinary, prudent person of decedent's age, intelligence, experience, and capacity, placed in the same situation would have probably acted, then it would not be warranted in finding him guilty of negligence.

Appellant says this instruction was erroneous because it was not applicable to the issues presented. He says that there was no evidence that appellee's decedent was in any apparent danger; that there was no evidence that Charles Key ever saw appellant's car before he was struck. The evidence on this subject was given by appellant himself, and he stated that he did not think Charles Key saw him before the car struck him. As pointed out above under the facts presented, the jury would have had a right to infer that Charles Key saw appellant's car as it approached, even though he did not see it immediately before the collision. So we think appellant's position cannot be sustained.

It is also contended that the instruction is erroneous because, according to the instruction, it makes no difference whether appellee's son was guilty of negligence in bringing himself into a position of danger or not.

We have heretofore pointed out that in the first place appellee's son had a right to walk upon the west edge of the pavement, and that it was not negligence *per se* to so walk. In the second place he had a right to rely upon the assumption that appellant would see him and would not run him down without warning.

It cannot be said, as a matter of law, that appellee's son was guilty of negligence in failing to step off the highway until he had some notice or warning, or reasonable grounds to believe that appellant did not see him or did not intend to turn to the left side of the road and pass him. But after appellee's son had such knowledge or notice, then he must act as

an ordinary, prudent person of his age and experience would act under such circumstances.

Whether or not appellee's son had such a warning, or had reasonable cause to believe that appellant did not see him and was not going to turn to the left in time for him to step off the pavement and avoid injury, was, under the circumstances of this case, a question of fact for the jury. Other instructions given and refused are made the basis for a reversal of the judgment. We do not think it advisable to write upon the various errors assigned. Appellant's brief contains 367 printed pages, and 19 alleged errors and rulings are urged with reference to the pleadings alone. The motion for a new trial specifies 86 separate reasons—over 60 instructions were read to the jury— 93 interrogatories were submitted and answered. Appellant has 69 propositions, and under each proposition he cites as many as 20 to 30 cases. We do not think we would be justified in extending this opinion to the extent necessary to discuss these various objections. It is evident in this case, as in many jury cases, that far too many instructions were given. It is the purpose of instructions to give the jury a clear and definite statement of the law, and too many instructions often confuse the jury and thus defeat their very purpose. However, this is primarily the province of the trial court.

We have, however, examined all of the questions presented by appellant in his brief, and find no reversible error.

Judgment affirmed.

NOTE.—Reported in 33 N. E. (2d) 330.