Robert SCHNEIDER,
Plaintiff–Appellant,

v.

William WILSON, Defendant–Appellee.

No. 24A01–8709–CV–223.

Court of Appeals of Indiana,
First District.

April 25, 1988.

Jon R. Pactor, Indianapolis, for plaintiff-appellant.

Frank G. Kramer, Ewbank & Kramer, Lawrenceburg, for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Robert P. Schneider (Schneider), appeals the trial court's granting of summary judgment for defendant-appellee, William R. Wilson (Wilson), in a legal malpractice action wherein Schneider sought damages resulting from the manner in which Wilson represented him against the Penn Central Railroad (Penn Central).

We reverse.

### STATEMENT OF THE FACTS

The facts and inferences most favorable to the non-moving party (Schneider) are as follows. On January 3, 1976, at approximately 3:50 p.m., Schneider was driving his truck west on old U.S. 50 toward the trailer court where he lived in Lawrenceburg, Indiana. Schneider turned off old U.S. 50 onto a private road to enter the trailer court. After a distance of approximately

50 feet, the road crossed railroad tracks belonging to Penn Central. There were no stop signs, electrical devices, bells, or lights at the railroad crossing. As Schneider attempted to cross the railroad tracks, a Penn Central train engine ran into his truck. Schneider suffered head injuries and numerous bruises.

Schneider stated that he did not hear any bells or whistles before the accident. The train's engineer, Edward A. Dansberry (Dansberry), stated that he blew the train's whistle and sounded its bell as he approached the crossing. Dansberry further stated that Schneider's truck was moving not more than ten miles per hour when the collision occurred.

While patrolling the area, Robert Waldon (Waldon), Deputy Sheriff of Dearborn County, Indiana, heard the collision. Waldon drove to the crossing and found Schneider in the truck. Waldon smelled alcohol emitting from the cab of the truck. Schneider had consumed a few beers earlier that day, and a blood sample later obtained from Schneider at the Dearborn County Hospital (Hospital) revealed sixteen/hundredths percent (.16%), by weight of alcohol in his blood. Nevertheless, Schneider was never charged with drunken driving. Furthermore, Schneider stated he was not drunk at the time of the accident.

After the accident Penn Central offered to settle. However, Schneider hired Wilson, an attorney at law, to represent him in a lawsuit against Penn Central. Wilson drafted, signed, and filed the suit for $57,000.00 in the Dearborn Circuit Court on January 3, 1978.

In his representative capacity, Wilson failed to determine the extent of Schneider's injuries, ascertain the medical services Schneider received, or conduct interviews of Penn Central personnel. Wilson stated that he could not recall performing any legal research for Schneider. Furthermore, as noted in allegations numbered 5 through 19 of Schneider's complaint, which were admitted by Wilson's failure to deny them:

5. The case pended for more than five years, when, on March 31, 1983, the court dismissed the case because of Wilson's failure to provide records through discovery and to obey the court's orders for discovery.

6. Penn Central had submitted interrogatories on March 6, 1978.

7. Ten months later on January 31, 1979, Penn Central got a court order to compel compliance with its discovery requests.

8. No answers were filed at all until October 6, 1982, but the answers were not complete and records were not produced.

9. On February 7, 1983, the Dearborn Circuit Court ordered that the case be dismissed with prejudice "unless plaintiff provides defendant with copies of his medical bills and wage loss verification on or before March 24, 1983."

10. Although Schneider provided the information on at least one and probably two or three occasions to Mr. Wilson, the attorney never turned them over to the attorney for Penn Central.

11. On March 23, 1983, Penn Central filed a motion to dismiss in which Penn Central outlined the history of its frustrations and Wilson's non-compliance.

12. The court set a hearing on the motion to dismiss for 9 a.m., March 29.

13. Wilson failed to attend the hearing on March 29.

14. Accordingly on March 31, the Dearborn Circuit Court granted the motion to dismiss with prejudice.

15. Instead of Wilson's providing the records, he waited until May 18, 1983 to file a "Motion to Re–Instate."

16. The court held a hearing for the reinstatement of the case on August 12, but Wilson still had not produced the records.

17. The court took the motion for reinstatement under advisement and did not rule until February 8, 1984 when the court found that the records still had not been turned over and overruled the motion.

18. Wilson performed no discovery and did not engage in any settlement negotiations with Penn Central.

19. Wilson failed to exercise reasonable care and skill in handling Mr. Schneider's complaint, and as a result of Wilson's negligence, Schneider has suffered damages.

Schneider consequently filed suit against Wilson for legal malpractice. Wilson moved for summary judgment. The trial court granted the motion, holding that Schneider's claim against Penn Central was without merit, in that he was contributorily negligent, and therefore, there was no genuine issue of material fact.

### ISSUE

Schneider presents two issues on appeal. Because we reverse, we will discuss only that issue which is dispositive, namely whether the trial court erred in granting summary judgment for Wilson by finding that Schneider was contributorily negligent when the train collided into his truck.

### DISCUSSION AND DECISION

Schneider contends that the trial court erred in concluding that Wilson was entitled to judgment as a matter of law. Summary judgment is appropriate where there exists no issue of material fact and the moving party is entitled to judgment as a matter of law. *Bailey v. Martz* (1986), Ind.App., 488 N.E.2d 716; *Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367; Ind.Rules of Procedure, Trial Rule 56(C). The moving party has the burden of proving that he is entitled to judgment as a matter of law. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677. The facts are viewed in a light most favorable to the opponent. *Id.* Finally, when reviewing the grant of summary judgment, this court must determine that there is no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Id.*

The rule is that an attorney may be held liable to his client for damages resulting from his failure to exercise ordinary care, skill, and diligence. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391.

The measure of damages in such cases is generally the value of the claim lost. *Id.* The essential elements in a cause for legal malpractice are:

1. employment of the attorney (the duty);
2. failure by the attorney to exercise ordinary skill and knowledge (the breach);
3. proximate cause (causation); and
4. loss to the plaintiff (damages).

*Bailey, supra; Fiddler v. Hobbs* (1985), Ind.App., 475 N.E.2d 1172.

Schneider's complaint alleges Wilson is guilty of malpractice because he failed to exercise reasonable care and skill in handling Schneider's case against Penn Central thereby causing the case to be dismissed with prejudice. Wilson does not deny Schneider's allegations but instead argues that Schneider's actions, with respect to Penn Central, constituted contributory negligence which operated as a complete defense to his claim against Penn Central. Wilson concludes that because Schneider's underlying claim was without merit as a matter of law, his claim against Wilson is also without merit.

Under Indiana law, contributory negligence is a complete defense.[1] *Bailey, supra; Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656. Contributory negligence is defined as:

> The failure of a person to exercise for his own safety that degree of care and caution which an ordinarily reasonable and prudent person in a similar situation would exercise.

*Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 408, 379 N.E.2d 1004, 1007. The issue of contributory negligence is governed by the same objective standards as are employed in determining the negligence of a defendant. *Cartwright v. Harris* (1980), Ind.App., 400 N.E.2d 1192. Therefore, Wilson is arguing that Schneider's actions, with respect to the railroad crossing, were unreasonable under the circumstances so as to constitute lack of ordinary care, contributing to the collision with the train,

---

1. As of January 1, 1985, IND.CODE 34-4-33, Comparative Fault, alters this rule.

thereby barring his claim against Penn Central.

Specifically, Wilson asserts that Schneider's actions with respect to the railroad crossing were violative of IND.CODE 9–4–1–106 and IND.CODE 9–4–1–54(b), and by such conduct Schneider was contributorily negligent which proximately caused his injury. IND.CODE 9–4–1–106 provides:

> Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely when:
>
> a. A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.
>
> b. A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.
>
> c. A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.
>
> d. An approaching train is plainly visible and is in hazardous proximity to such crossing.

IND.CODE 9–4–1–54(b)(4) provides:

> Evidence that there was ten hundredths percent (10/100%), or more, by weight of alcohol in his blood, constitutes prima facie evidence that he was intoxicated.

■ In Indiana, the issue of contributory negligence is generally a question for the jury unless the facts are undisputed and only a single inference can be drawn therefrom. *Brown v. Northern Ind. Public Service Co.* (1986), Ind.App., 496 N.E.2d 794; *Koroniotis, supra.* Addressing Wilson's contention that Schneider's actions violated IND.CODE 9–4–1–106, arguably more than one inference can be drawn form the facts presented. That statute does create a duty to stop and not proceed at a railroad crossing under the conditions stated in the statute. Whether those conditions existed will determine if Schneider had such a duty. Because Schneider's accident occurred at a private crossing, paragraphs (a), (b), and (c) of the statute are inapplicable. There are no electrical devices, arms, or crossing gates to which paragraphs (a) and (b) refer. Paragraphs (c) applies to a "highway crossing" not a private crossing. Furthermore, while paragraph (c) requires a train to emit a warning signal audible for a distance of 1,500 feet of the highway crossing, it is not even clear whether the Penn Central train actually blew its whistle or sounded its bell let alone whether Schneider heard them.

While paragraph (d) arguably does apply to this case, it is not clear from the facts presented that the train was plainly visible to Schneider. Schneider's truck was traveling at a speed of not more than ten miles per hour when the collision occurred. Schneider did not accelerate his truck when he approached the railroad crossing. Furthermore, the train ran into Schneider's truck. From these facts an inference can be raised that the train was not plainly visible to Schneider and that he did not hear any whistles or bells.

■ Wilson further argues that Schneider was driving while intoxicated in violation of IND.CODE 9–4–1–54(b) when the accident occurred constituting contributory negligence. The blood sample obtained from Schneider revealed a blood alcohol level of sixteen/hundredths percent (.16%). This constitutes prima facie evidence that Schneider was intoxicated while driving his truck when the accident occurred. However, this presumption may be rebutted by the fact that Schneider was never charged with driving while intoxicated and his statement that he was not drunk. The lack of such charge, after investigation by the police, creates an inference that Schneider may not have violated that statute.

■ Whether Schneider's actions in regard to the railroad crossing constituted contributory negligence is not the only question we must address. The issue of whether Schneider's conduct proximately

contributed to the accident would also have to be determined.

The issue of causation is generally a question for the trier of fact, and is not answerable as a matter of law. *Department of Commerce v. Glick* (1978), 175 Ind.App. 449, 372 N.E.2d 479. Factors including the short turn-off distance from old U.S. 50 to the railroad crossing, the lack of a crossing gate and stop sign, the slow rate of speed at which Schneider was traveling, and the fact that the train ran into Schneider's truck, arguably raise more than one inference concerning the issue of causation. Finally, the rule is that even assuming a violation of a statutory duty, creating a presumption of negligence, a question of fact exists as to whether that violation is the proximate cause of the injury. *Lewis v. Lockard* (1986), Ind.App., 498 N.E.2d 1024. In addition, this court has held that even where the evidence established as a matter of law that the driver was intoxicated, the question of whether that condition proximately caused the accident would remain for the jury. *Indianapolis Union Railway v. Walker* (1974), 162 Ind.App. 166, 318 N.E.2d 578.

Wilson's contention that Schneider was contributorily negligent which entitled him to summary judgment, is similar to the argument made in *Bailey, supra,* which also involved a legal malpractice suit. In *Bailey* the victim, while approaching a railroad crossing, saw an oncoming train and accelerated his motorbike in order to beat it. After realizing he would not succeed, he tried to stop the motorbike, skidding 78 feet to the crossing where he ran into the train. The victim's parents brought a legal malpractice suit against their attorneys for failure to prosecute the action against the railroad. The court, while disposing of the case on other grounds, held that the plaintiff's contributory negligence would entitle his attorneys to summary judgment. *Id.* at 721.

The *Bailey* case is distinguishable because in that case the victim saw the train and then accelerated his motorbike to beat the train to the crossing, thereby causing his own injury. In the present case,

Schneider did not accelerate his truck. Schneider's truck was traveling at a speed of not more than 10 miles per hour when the accident occurred. The train ran into Schneider's truck, while in *Bailey* the victim's motorbike ran into the train. Therefore, while in *Bailey* the evidence clearly supported the granting of summary judgment, in the present case the facts are less clear. The facts are not undisputed and more than one inference can be drawn therefrom. *Brown, supra; Koroniotis, supra.* Furthermore, as the court in *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18 stated:

> The purpose of the summary judgment procedure is to terminate litigation of a cause about which there can be no factual dispute and which may be determined as a matter of law. We have insisted on caution in the application of the procedure. The right of parties to have a fair determination of genuine issues within a valid cause should not be thwarted through a procedure which exists to eliminate undue burdens upon litigants and the expose of spurious lawsuits. Mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant.

*Id.,* 368 N.E.2d at 20–21. Therefore, the trial court erred in granting summary judgment for Wilson.

For the above reasons, this cause is reversed and remanded to the trial court.

Judgment reversed.

RATLIFF, C.J., and SULLIVAN, J., concur.