**Douglas Lee BLACKBURN and Melody Blackburn, Appellants–Plaintiffs,**

v.

**CITY OF ROCHESTER,**
**Appellee–Defendant.**

No. 52A02–9304–CV–00177.

Court of Appeals of Indiana,
Second District.

June 28, 1994.

Ordered Published Sept. 15, 1994.

Kelly Leeman, Logansport, for appellants.

Mark W. Baeverstad, Craig J. Bobay, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellee.

*MEMORANDUM DECISION*

FRIEDLANDER, Judge.

Douglas Blackburn and Melody Blackburn (collectively referred to as "Blackburn") appeal from a grant of partial summary judgment and judgment entered against them upon an adverse jury verdict in their personal injury action against the City of Rochester (the City). Upon appeal, Blackburn presents the following restated issues for review:

I. Did the trial court err in granting the City's motion for judgment on the evidence on the issue of willful, wanton or reckless misconduct?

II. Did the trial court err in refusing to give Blackburn's Proposed Jury Instruction No. 9?

We affirm.

The evidence favorable to Blackburn, the nonmoving party, shows that on June 19, 1988, Douglas was swimming with members of his family at the City's swimming pool. The pool had a diving area, which at that time included a three-meter diving board. After jumping off of the board feet first several times, Douglas dove off of the board head first. After diving into the water, Douglas's head struck the bottom of the pool where the bottom slopes up from the deep end to the shallow end. Douglas suffered cuts to his chin and scalp, among other injuries. Additional facts will be provided where relevant.

I.

Blackburn argues that the court erred in granting the City's motion for judgment on the evidence.

Prior to trial, the City submitted a motion for partial summary judgment on the issue of willful and wanton misconduct. The

court ruled that it would treat the motion as a motion for judgment on the evidence, and would make a ruling following the completion of Blackburn's case-in-chief. At the close of Blackburn's case, the court entered the following judgment:

"And now out of the presence of the jury, argument is heard on Defendant's Motion for Partial Summary Judgment. Court now grants said motion, which the court treats as Motion for Judgment on the Evidence, as to willful and wanton disregard. The issue of negligence remains before the jury." *Record* at 566.

In ruling upon the motion at the close of Blackburn's case, the trial court properly converted the partial summary judgment motion into a Trial Rule 50 motion for judgment on the evidence. The standard of review in the instant case, therefore, is that which applies when reviewing the grant of a T.R. 50 motion.

"The motion should be granted only where there is a complete failure of proof, that is where there is no substantial evidence or reasonable inference from the evidence supporting an essential element of the claim.... Neither this court nor the trial court may weigh conflicting evidence when examining a motion for judgment on the evidence. *First Bank & Trust Co. of Clay City v. Bunch* (1984), Ind.App., 460 N.E.2d 517, 518–19 [citations omitted]."

■ Because Blackburn's action is against a governmental entity, it is governed by the law of contributory negligence. Ind.Code 34–4–33–8. In such cases, a finding of any contributory negligence on the plaintiff's part operates as a complete bar to recovery. *Indiana Dept. of Highways v. Naumann* (1991), Ind.App., 577 N.E.2d 994, *trans. denied.* Contributory negligence, however, is not a bar to recovery when the defendant's willful and wanton conduct is determined to have been a proximate cause of the plaintiff's injuries. *Witham v. Norfolk & Western Ry. Co.* (1990), Ind., 561 N.E.2d 484, 485 n. 1; *McKeown v. Calusa* (1977), 172 Ind.App. 1, 359 N.E.2d 550.

Blackburn argues that "willful" and "wanton" (or "reckless") are separate concepts and further argues that the City is guilty of

the latter. Blackburn concedes that he "never asserted that the conduct on the part of the City of Rochester met the willful standard". *Appellant's Brief* at 11. It is therefore apparent that the success or failure of Blackburn's argument in this regard rests upon demonstrating that there remains a question of fact as to whether the City was guilty of wanton misconduct, also termed "constructive willfulness". *See Witham, supra*, 561 N.E.2d at 486.

■ Wanton conduct consists of either "1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Id.*

The *Witham* court further stated that such conduct is comprised of two elements: 1) the defendant's knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury; and 2) the defendant's conduct must have exhibited an indifference to the consequences of the act. *Id.*

In the instant case, Blackburn points to the following as evidence of the City's wanton misconduct: 1) The diving area was designed and built for competitive divers and was unsafe for recreational divers; 2) the City's diving area was not in compliance with standards developed in 1969 for proper design and operation of recreational pools; 3) recreational divers at the City's pool received inadequate instruction and training in safe diving practices; 4) the City purchased a replacement diving board in 1988 without adequately researching available material pertaining to choosing an appropriate board; and 5) the 1988 replacement three-meter diving board was intended to be used by competitive divers and was not safe for recreational divers.

The City's pool was built in 1970. The diving area included a three-meter board flanked on both sides by one-meter diving boards. The original three-meter board,

composed of wood encased in fiberglass, was replaced with an identical board approximately seven years later, and replaced again in 1988 with an identical board before Blackburn was injured. The pool's diving well was designed for competitive diving in the sense that the area of the pool which was the appropriate depth for a three-meter diving board was located directly in front of the three-meter board and only several feet from the end of the board. This is because competitive divers spring nearly vertically off of the board, thus entering the pool at a ninety degree angle near the end of the board. Recreational divers, on the other hand, tend to spring more horizontally off of the board, thus entering the water farther from the end of the board at a less severe angle. Assumably, a pool designed specifically for recreational diving would have been designed such that the area deep enough for three-meter dives would extend farther from the end of the diving board than would be necessary for competitive diving.

In order to establish the requisite wantonness, Blackburn was required to establish that the City engaged in the "conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to the consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will *probably* result." *Frybarger v. Coffelt* (1979) 180 Ind.App. 160, 387 N.E.2d 104, 106 [emphasis in original]. As the *Frybarger* court noted, the *"known probability* of injury is the key to the consideration of wantonness." *Id.* [emphasis in original]. Blackburn was also required to demonstrate that the City acted with a perverse motive or conscious indifference to the consequences of allowing recreational divers to use the three-meter diving board. *Id.*

Stan Musgrave was the City's pool manager at the time of Blackburn's injuries, a position he had occupied for approximately twenty-one years. As pool manager, Musgrave was ultimately responsible for all of the conditions or decisions of which Blackburn complains. Musgrave was responsible for deciding which type of board to use on the three-meter apparatus, the training and instruction, if any, to be given recreational users of the diving boards, and even whether there should have been a three-meter board at the pool.

Musgrave testified that he did not believe, much less know, that the board used on the City's three-meter diving apparatus was designed for use in competitive diving, as opposed to recreational diving.[1] Blackburn does not direct us to any evidence of record that refutes Musgrave's contention in this regard. Musgrave testified that when the board needed to be replaced, he consulted a catalog and decided to order a board that was identical to the one being replaced. This was based in part upon his assumption that the previous board had been chosen correctly.

Musgrave also estimated that there had been approximately 600,000 dives off of the high dive in the more than twenty years since the pool had opened. In all of that time, to Musgrave's knowledge, there had been only one diving-related injury at the City's pool, and that occurred in the late 1970s. Such is inconsistent with "a known probability" on the City's part that using a three-meter diving board would result in injury.

Blackburn made much of the fact that, following Blackburn's injury, the City took remedial measures which included removing the three-meter board. Blackburn states that "it was only after [Blackburn's] injury that the pool manager reported to the Park Board that the three[-]meter diving board should be removed because it was too dangerous for use in the Rochester swimming pool." *Appellant's Brief* at 15. In most cases, evidence of subsequent remedial measures is not admissible to prove even negligent conduct. *See, e.g., Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383. This rule has evolved in part

---

1. The question of whether the diving board was for competitive or recreational diving was disputed at trial. Musgrave maintained that a competitive board is made of aluminum, not fiberglass-encased wood. Be that as it may, we resolve all factual disputes in favor of Blackburn, the non-moving party.

because the probative value of such evidence is slight. The same is true here.

Following Blackburn's injury, after reviewing the applicable safety standards and consulting experts, Musgrave concluded that the three-meter board should be removed because the diving well did not meet current safety standards for the use of three-meter boards. There is no evidence that Musgrave had formed such a conclusion prior to Blackburn's injury. The undertaking of subsequent remedial measures is not evidence of Musgrave's pre-injury state of awareness. Moreover, neither Musgrave's expertise nor the number of previous diving-related injuries render Musgrave's pre-injury lack of knowledge in that regard "wanton" conduct. We therefore fail to discern how such permits a reasonable inference of conscious disregard of the consequences of allowing recreational divers to use the high dive.

The same rationale applies to Blackburn's other arguments with regard to the specific allegations of wanton misconduct. The record does not contain evidence from which a reasonable jury could conclude that Musgrave, i.e., the City, was aware that allowing recreational divers to use the three-meter diving board would likely result in injury, or that Musgrave was indifferent to the likelihood of such injury. This is true whether the indicia of alleged wantonness is failure to instruct or train, improper diving well design, or improper board type. Musgrave's testimony is consistent only with negligence, if that. Nothing of record indicates that he was actually aware of the probability of injury and was therefore indifferent to the risk, nor do the circumstances (e.g., his training or expertise, history of diving-related injuries at the pool) demonstrate such. In the absence of such evidence, the trial court did not err in withdrawing from the jury's consideration the question of willful and wanton misconduct.

## II.

Blackburn argues that the trial court erred in failing to read Blackburn's proposed Instruction No. 9, which reads:

"The Defendant, City of Rochester, has asserted that they are [sic] not liable for any negligent act or omission by them because the Plaintiff, Douglas Blackburn, was contributorily negligent. In weighing the evidence on this issue you are advised that the fact that a person engaged in dangerous activity does not, under the reasonable care standard, mandate a finding of negligence. You may weigh whether the plaintiff was entitled to rely upon the Defendant's exercise of reasonable care as being sufficient to protect his safety so that his own exercise of care would be reasonable under the circumstances. Further, it is not mere knowledge of the condition that will charge a party with negligence, he must also appreciate the peril he faces. Moreover, the general rule is that a person, until he has notice to the contrary, has the right to assume that others owing him a duty of reasonable care will exercise reasonable care toward him and is not required to be constantly prepared or on-guard [sic] for every conceivable circumstance and to insure against every accident particularly where the dangerous condition was created by the negligence of another. The fact that a person might have acted in a manner which hindsight later proves to be more judicious does not establish negligence of the part of the person.

In other words, a person may act in reliance upon the assumption that a party who has a duty to exercise reasonable care for his safety has in fact done so until he learns that that party has not fulfilled their [sic] duty toward him." *Record* at 145.

Blackburn specifically argues that failure to give proposed Instruction No. 9 was error because it resulted in the jury not being informed of the following propositions of law: 1) "The rule in Indiana is that until a person has notice to the contrary, he or she has the right to assume that other people will exercise due care toward him or her." *Appellant's Brief* at 17; 2) "[p]eople are not required to anticipate the Defendant's negligence." *Id.;* and 3) "the possibility of [Douglas's] contributory negligence needed to be anticipated by the City of Rochester and understood by the jury in the context of the standard of care that the law requires." *Id.* at 18.

When considering claims of error regarding giving or refusing to give jury instructions, we consider whether the tendered instruction correctly states the law, whether the instruction is supported by evidence of record, and whether the substance of a refused instruction is covered by other instructions which were given. *Wal–Mart Stores, Inc. v. Blaylock* (1992), Ind.App., 591 N.E.2d 624, *trans. denied.*

Final Instruction No. 9 contains the first proposition of law which Blackburn contends the jury was not apprised of. Final Instruction No. 9 reads, in relevant part: "Further, the general rule is that a person, until he has notice to the contrary, has the right to assume that others owing him a duty of reasonable care will exercise reasonable care towards him." *Record* at 515. Because the substance of the refused instruction was contained in another instruction that was read to the jury, the trial court did not commit reversible error. *Wal–Mart, supra.*

Final Instruction No. 12 contains the substance of the second proposition of law which Blackburn contends was omitted: "No one is under a duty to foresee or anticipate the negligence of another." *Record* at 515. Therefore, the trial court did not commit reversible error in refusing to read the instruction. *Wal–Mart, supra.*

With regard to the third proposition of law, Blackburn argues that in the absence of Proposed Instruction No. 9, the jury was not permitted to "weigh whether [Blackburn] was entitled to rely upon the City of Rochester's exercise of reasonable care towards him as being sufficient to protect his safety." *Appellant's Brief* at 16. Blackburn notes that the court instead instructed the jury that it is proper to assume that others will obey rules and exercise care for themselves. Through Final Instruction No. 9, however, the jury was instructed that it could "consider whether or not the plaintiff was entitled to rely upon the defendant's exercise of reasonable care as being sufficient to protect his safety." *Record* at 515. This is essentially a restatement of the third proposition of law in question.

The substance of the refused proposed instruction, as identified by Blackburn, was contained in other instructions read to the jury. Therefore, the trial court's refusal to read Proposed Instruction No. 9 to the jury was not reversible error. *Wal–Mart, supra.*

Judgment affirmed.

KIRSCH and GARRARD, JJ., concur.