Ronald NESVIG, Appellant,

v.

TOWN OF PORTER and Barrett Doyle, Appellees.

No. 64A03–9503–CV–80.

Court of Appeals of Indiana.

Aug. 8, 1996.

Saul I. Ruman, David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, for Appellant.

Robert J. Konopa, Sean E.G. Kenyon, Konopa & Murphy, P.C., South Bend, for Appellees.

## OPINION

STATON, Judge.

Ronald Nesvig ("Nesvig") appeals from a judgment following a jury trial against him and in favor of the Town of Porter ("the Town") and Barrett Doyle ("Doyle"). Nesvig raises seven issues for appellate review which we consolidate into five and restate as follows:

I. Whether the trial court erred in denying his motion for partial summary judgment on the issue of contributory negligence based upon Nesvig's intoxication at the time of the accident.

II. Whether the trial court erred in granting the Town and Doyle's motion for judgment on the evidence on the issue of Doyle's willful and wanton misconduct.

III. Whether the trial court erred in granting the Town and Doyle's motion in limine to exclude evidence of Doyle's operation of a commercial vehicle without a proper license.

IV. Whether the trial court erred in refusing portions of Nesvig's tendered jury instructions.

V. Whether the trial court erred in denying Nesvig's motion to correct error regarding bailiff misconduct during jury deliberations.

We affirm.

The facts most favorable to the judgment reveal that on the evening of January 4, 1991, Nesvig went out for dinner and alcoholic drinks at a local restaurant. Around midnight, he returned to his apartment with a friend and consumed more alcohol until he fell asleep at approximately 4:00 or 5:00 that morning. A few hours later, Nesvig awoke and left his apartment for work. He walked to Glacier Trail and then walked on the eastern edge of the road en route to his car.

During the course of his walk, he passed and greeted Father Mariano Vita who was shoveling snow which had fallen the previous night. At the same time, a Town of Porter snowplow operated by Doyle came down the road, removing snow to the east side of the street. After waving to and passing Father Vita and Nesvig, Doyle reached the end of the road. Because Glacier Trail was a narrow dead-end roadway, Doyle could not turn the snowplow around; instead, he lifted the plow blade and put the snowplow in reverse in order to back down the road. While in reverse, the snowplow's automatic beeper alarm activated. Doyle then checked his mirrors, saw no one in his path, and began to back down the street. While backing up, the snowplow struck and ran over Nesvig causing him severe injury. Nesvig was taken to a local hospital where a blood alcohol test was taken that revealed a blood alcohol content of .20%, and from which it was estimated that his blood alcohol content at the time of the accident was approximately between .192% and .212%.

In February 1992, Nesvig filed a complaint for damages against the Town and Doyle. In June 1994, Nesvig filed a motion in limine requesting the court exclude evidence of his blood alcohol level and a motion for partial summary judgment on the issue of contributory negligence. The next day, the Town and Doyle filed a motion in limine requesting the trial court exclude evidence: (1) of Doyle's lack of commercial driver's license; (2) that Nesvig's blood alcohol content decreased after the accident; and (3) of the investigating police officers' conclusions that the collision was caused by Doyle. Nesvig also filed a motion to strike defendants' expert witness. On July 13, 1994, the trial court issued an order on the pending motions, denying Nesvig's motion for partial summary judgment and motion in limine regarding Nesvig's blood alcohol content, granting the Town and Doyle's motion in limine regarding the commercial driver's license, and denying Nesvig's motion to strike defendants' expert witness.

A jury trial was held and at the end of Nesvig's case, the Town and Doyle moved for judgment on the evidence pursuant to IND. TRIAL RULE 50 arguing that Nesvig had failed to present any evidence of wanton and willful misconduct on their behalf. The trial court granted the motion. The trial resumed and on July 21, 1994, the jury returned a verdict for the Town and Doyle. On August 22, 1994, Nesvig filed a motion to correct error alleging that the bailiff engaged in misconduct when he responded to a jury question during deliberations regarding the verdict forms. After hearing arguments from counsel, the trial court denied the motion. This appeal ensued.

## I.

### Summary Judgment—Contributory Negligence

First, Nesvig contends that the trial court erred in denying his motion for partial summary judgment on the issue of his contributory negligence with regard to his blood alcohol content at the time of the accident.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. IND. TRIAL RULE 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

Nesvig argues that the trial court erred in denying his motion for partial summary judgment on the defense of contributory negligence. Nesvig contends that the Town and Doyle failed to show that the evidence of his blood alcohol content was indicative of any negligent conduct and that this conduct was the proximate cause of his injuries.

■ Initially, we note that Nesvig's action is against a governmental entity and its agent and is governed by the law of contributory negligence. IND.CODE § 34–4–33–8 (1993). A finding of contributory negligence on the part of a plaintiff operates as a complete bar to recovery and is independent of any negligence on the part of the defendant. *Blackburn v. City of Rochester,* 640 N.E.2d 1068, 1070 (Ind.Ct.App.1994); *Bailey v. Martz,* 488 N.E.2d 716, 721 (Ind.Ct.App. 1986), *reh. denied, trans. denied.*

■ Contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in

a similar situation would exercise. *Brown v. Northern Ind. Public Service Co.*, 496 N.E.2d 794, 798 (Ind.Ct.App.1986), *reh. denied, trans. denied.* The issue of contributory negligence is generally a question of fact for the jury unless the facts are undisputed and only a single inference can be drawn therefrom. *Schneider v. Wilson*, 521 N.E.2d 1341, 1344 (Ind.Ct.App.1988).

■■■ In examining the issue of contributory negligence with regard to intoxicated persons, this court has noted that for the intoxication to be actionable in negligence it must be the proximate cause of the injury. *Colaw v. Nicholson*, 450 N.E.2d 1023, 1026 (Ind.Ct.App.1983)(examining contributory negligence of passenger in automobile). Thus, in order for an intoxicated person to be deemed contributorily negligent, not only must the intoxication lead to negligent conduct, this conduct must also be the proximate cause of the party's injuries. *See Schneider, supra.* Causation, like contributory negligence, is generally a question for the trier of fact and is not answerable as a matter of law. *Id.*

Nesvig argues that the Town and Doyle failed to present any evidence that he acted negligently and thus, the defense of contributory negligence cannot stand. Nesvig focuses his argument on the notion that intoxication, by itself, does not constitute negligent conduct, and therefore, the defense of contributory negligence was unavailable. However, under the doctrine of contributory negligence, the issue is whether the plaintiff failed to exercise ordinary care for his safety under the circumstances. *See Brown, supra.* Our inquiry rests with Nesvig's conduct as it relates to the incident in question, not merely on the issue of his intoxication; instead Nesvig's intoxication is a consideration in determining whether he engaged in negligent conduct.

IND.CODE § 9–21–17–14 (1993)[1] provides that if neither a sidewalk nor a shoulder is available, a pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway. IND.CODE § 9–21–17–15 (1993)[2] states that a pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway. Coincidentally IND.CODE § 9–21–8–37 (1993)[3] indicates that a person who drives a vehicle shall: (1) exercise due care to avoid colliding with a pedestrian; (2) exercise proper caution upon observing a child or an obviously confused, incapacitated, or intoxicated person.

■■■ In addition to our statutory law, this court has stated that all drivers are under a common law duty to maintain a proper lookout while traveling on the roadways. *Springman by Springman v. Hall*, 642 N.E.2d 521, 523 (Ind.Ct.App.1994). Correspondingly, a pedestrian has no right to proceed heedlessly across a street without exercising ordinary care for his own safety. *Kilmer v. Galbreth*, 139 Ind.App. 252, 218 N.E.2d 361, 367 (1966), *reh. denied.* A pedestrian must at all times exercise ordinary care for his own safety and is required to avail himself of all his faculties to avoid any danger or injury. *Id.* Thus, Nesvig had a statutory duty to yield to a vehicle in the roadway as well as a common law duty to exercise ordinary care and avail himself of all his faculties to avoid danger or injury. Evidence of his intoxication was pertinent to the issue of whether he availed himself of all his faculties to avoid danger or injury.

Nesvig further argues that he had a right to assume that the snowplow would not collide with him and based upon that assumption, he acted as a reasonably prudent person under the circumstances. Nesvig cites *Pfisterer v. Key*, 218 Ind. 521, 33 N.E.2d 330 (1941), *reh. denied,* to support this contention. In *Pfisterer,* the minor victim was walking on the side of a roadway as an automobile traveling in the opposite direction approached him. The driver did not see the victim until the car was within fifteen to twenty feet of him, and had insufficient time

---

**1.** This statute replaced IND.CODE § 9–4–1–90(c)(1988). We refer to the prior statutes as these statutes were in effect at the time of the incident at issue.

**2.** This statute replaced IND.CODE § 9–4–1–90(e)(1988).

**3.** This statute replaced IND.CODE § 9–4–1–89(1988).

to sound the horn or give any other signal before the accident. *Id.*

In determining whether the victim was contributorily negligent, the Indiana Supreme Court noted that there was no evidence to indicate that the victim saw or heard the approach of the car. *Id.* 33 N.E.2d at 333. The court determined that because no evidence existed to show that the victim saw or heard the car, there can be no negligence imputed to him. Moreover, the court explained, "[The victim] had a right to assume that [the driver] did see him, and it was not negligence per se on his part to act upon that assumption." *Id.* This coupled with the fact that the driver did not sound his horn indicated to the victim that the driver would not pursue "his direct course, but would sufficiently swerve to the left upon the unoccupied part of the highway, and thus avoid a collision." *Id.* The court concluded that until the victim had some notice to the contrary, his conduct in maintaining his course was reasonable under the circumstances. *Id.*

Likewise, Nesvig argues that he had a right to assume the snowplow would not strike him. However, the facts in *Pfisterer* are distinguishable as the victim was a minor and the driver did not sound his horn or give any warning of his approach; here, Nesvig was an adult pedestrian expected to exercise ordinary care for his own safety and had notice of the snowplow's approach as an automatic warning signal sounded when the snowplow was in reverse. Accordingly, we find Nesvig's reliance upon *Pfisterer* unpersuasive and we reject his contention that under the circumstances, he had a right to assume the snowplow would not hit him.

Our review of the record further reveals that in his deposition, Father Vita testified that he heard the snowplow moving down the street and then he heard the warning signal when the plow backed down the street. Nes-

vig testified in his deposition that he remembered seeing the plow at the intersection of Glacier Trail and Duneland Street, that his hearing was normal, and that he was wearing his glasses at the time of the accident. Also, a police officer indicated that it would not be safe for a pedestrian to walk along Glacier Trail at the same time a snowplow was on the road given both the width of the road and the vehicle.

Notwithstanding Doyle's statutory and common law duty of care to maintain a proper lookout, Nesvig also had a duty of care to act as an ordinary, reasonable, and prudent person in the same situation and as a pedestrian, exercise ordinary care for his own safety. These questions present issues of fact for the jury to determine whether the Town and Doyle were negligent and if Nesvig was contributorily negligent. Likewise, a jury question remained regarding whether Nesvig's intoxication led to his negligent conduct and if that conduct was the proximate cause of his injury.[4] Accordingly, we conclude that material issues of fact existed regarding the defense of contributory negligence and that the trial court did not err when it denied Nesvig's motion for summary judgment.

## II.

### *Judgment on the Evidence—Willful, Wanton Conduct*

Second, Nesvig contends that the trial court erred in granting the Town and Doyle's motion for judgment on the evidence on the issue of wanton and willful conduct. IND. TRIAL RULE 50(A) provides that a party may move for a judgment on the evidence after the party carrying the burden of proof has failed to present sufficient evidence to support its claim. The purpose of a motion for judgment on the evidence is to test the

---

4. In support of his motion for summary judgment, Nesvig offered expert testimony that evidence of a person's blood alcohol content was not "a reliable predictor or indicator of a particular individual's ability or inability to perform tasks." Appellant's Br. at 21. Thus, Nesvig contends that the evidence of his blood alcohol content was insufficient to show that his alleged intoxication proximately caused his injuries. However, IND.CODE § 9–13–2–131 (1993) (replac-

ing IND.CODE § 9–11–1–7 (1988)) provides " 'prima facie evidence of intoxication' includes evidence that at the time of an alleged violation there was at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood." This expert testimony may serve to rebut the presumption that Nesvig's intoxication related to his alleged negligent conduct; however, it does not affirmatively show, as a matter of law, that Nesvig was not contributorily negligent.

sufficiency of the evidence. *Dallas Moser Transporters, Inc. v. Ensign,* 594 N.E.2d 454, 456 (Ind.Ct.App.1992), *reh. denied.*

In reviewing the grant of judgment on the evidence, we consider only the evidence and the reasonable inferences most favorable to the nonmoving party. *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind.1993). The evidence must support without conflict only one inference which is in favor of the defendant. *Id.* If there is any probative evidence or reasonable inference to be drawn from the evidence in favor of the plaintiff or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

Nesvig contends that judgment on the evidence was in error as Doyle's failure to check his blind spot prior to operating the snowplow in reverse constituted wanton and willful conduct. Wanton and willful conduct consists of either: (1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or (2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and has opportunity to avoid that risk. *Blackburn, supra,* at 1070 (quoting *Witham v. Norfolk & Western Ry. Co.,* 561 N.E.2d 484, 486 (Ind.1990), *reh. denied* ). This conduct is comprised of two elements: (1) the defendant's knowledge of an impending danger or consciousness of misconduct calculated to result in probable injury; and (2) the defendant's conduct must have exhibited an indifference to the consequences of the act. *Id.*

Neither party disputes the fact that the snowplow contained a blind spot and Doyle concedes that he did not get out of the snowplow and check his blind spot for pedestrians prior to striking Nesvig. Thus, the issue before this court is whether this constituted wanton and willful conduct.

Nesvig argues that Doyle and his superior engaged in "a procedure for backing up that did not keep a 'proper lookout' to the rear, that specifically precluded looking in a particular direction, and that was not designed to provide due regard for the safety of others." Appellant's Br. at 35.

In support, Nesvig cites *Pierce v. Walters,* 152 Ind.App. 321, 283 N.E.2d 560 (1972). There, Walters, the defendant and grandfather of the plaintiff, operated a truck across a spillway and levee on his farm, an area in which his grandchildren had been playing, and ran over his ten year old grandson who was hiding in the tall grass and weeds. *Id.* 283 N.E.2d at 561. This court determined that a genuine issue of fact existed regarding whether Walters engaged in willful and wanton conduct because: (1) Walters heard his son, plaintiff's father, admonish the child to move away from the spillway; (2) the child could not hear the truck because of the operation of another large truck and tractor within 80 to 100 feet; and (3) Walters, as a reasonable and prudent person, should have known that the child might disobey his father's order and come back to the area. *Id.* at 562. This court concluded that Walters' actions might be considered wanton or willful, if he did not first determine if his grandson or any of the other grandchildren were hiding in the grass or weeds before he drove his truck in an area through which he could not see. *Id.*

Similarly, Nesvig contends that Doyle engaged in such conduct when he failed to ascertain if anyone was in his blind spot. However, here, Doyle was aware of Nesvig's presence on the side of the road, saw no one in his rear view mirrors, and expected that, Nesvig, as a reasonable and prudent pedestrian, would have heard the sound of the snowplow as well as its automatic beeper, and would have stayed clear of its path. His conduct differed from Walters who was aware of the children's potential presence and took absolutely no precaution and operated his vehicle in an area he could not see.[5]

---

**5.** Nesvig also relies upon *Trent v. Rodgers,* 123 Ind.App. 139, 104 N.E.2d 759 (1952), *trans. denied* which is again distinguishable. In *Trent,* this court upheld a judgment for willful and wanton conduct when the defendant failed to look for oncoming automobiles before backing his vehicle out of an alley at a high rate of speed and striking an oncoming vehicle, and admitted

Furthermore, during the trial, Doyle testified that as he was operating the snowplow down Glacier Trail, he noticed Nesvig and Father Vita and waved to them. He testified that he looked back when he placed the snowplow in reverse but he did not get out of the vehicle and look at the blind spot. He indicated that when he is operating his vehicle on a dead-end street, he usually does not get out and look behind. He stated that when he travels down the dead-end street he can see "what I'm going against." Record at 592–593. He stated that when he notices pedestrians in an area off the road, "I assume that they would stay out until I cleared the area." *Id.* at 593. He further testified that when he notices children close to a road, he would probably get out and look, and with pedestrians, depending upon the situation, he would ordinarily get out and look.

Known probability of injury is the key to the consideration of wantonness. *Blackburn, supra,* at 1071 (quoting *Frybarger v. Coffelt,* 180 Ind.App. 160, 387 N.E.2d 104, 106 (1979)). Nesvig was required to establish that Doyle or the Town engaged in a course of conduct which would result in an intentional doing of a wrongful act with reckless indifference to the consequences and that Doyle had knowledge of existing conditions and that injury would probably result. *Id.* Doyle indicated that he was aware of Nesvig's presence off the road and that he assumed that as a reasonable and prudent pedestrian, Nesvig would remain clear of the snowplow. Nevertheless, Doyle checked his mirrors while in reverse to make sure his path was clear. Based upon these circumstances, we cannot determine that Doyle acted with reck-

less disregard for the safety of others in that his failure to physically check his blind spot on a dead-end street, after observing only two individuals in the area and out of his path, was willful and wanton conduct.

While Nesvig presented sufficient evidence that Doyle's failure may have constituted negligence, he did not set forth sufficient evidence that this amounted to willful and wanton conduct. Accordingly, we conclude that the trial court did not err when it granted Doyle's motion for judgment on the evidence.

### III.

### *Exclusion of Evidence*

 Third, Nesvig contends that the trial court erred when it excluded evidence regarding Doyle's lack of a commercial driver's license. Evidentiary determinations are committed to the trial court's discretion, and we will reverse that determination only upon a showing of an abuse of discretion. *Columbian Rope Co. v. Todd,* 631 N.E.2d 941, 943 (Ind.Ct.App.1994), *trans. dismissed.*

IND.CODE § 9–24–18–3 (1993)[6] provides:

A person that has a motor vehicle in the person's custody may not cause or knowingly permit a person to drive the vehicle upon a highway unless the person obtains a license or permit under this article.

IND.CODE § 9–24–18–4 (1993)[7] provides:

A person may not authorize or knowingly permit a motor vehicle owned by the person or under the person's control to be

---

that he saw the lights of the car but was so "damned mad" he did not care whether he hit the vehicle or not. *Id.* 104 N.E.2d at 762–764.

Finally, Nesvig directs our attention to *Wallace v. State,* 558 N.E.2d 864 (Ind.Ct.App.1990). In *Wallace,* this court determined that the defendant could not be deemed reckless for forcing a vehicle off the road when making a lane change. The court indicated that "reckless" requires that the defendant realize or should realize that there is a strong possibility harm might result from his actions. *Id.* at 865–866. Thus, the court concluded that the defendant had no intent to change lanes with conscious or unjustifiable disregard for the victims when he had no knowledge of their presence. *Id.* at 866. *See also Rowold v. State,* 629 N.E.2d 1285

(Ind.Ct.App.1994)(defendant guilty of criminal recklessness when fired shotgun at dog but instead struck neighbor and he realized or should have realized that there was a strong probability that harm might occur). Likewise, Nesvig argues that Doyle should have been aware of his presence and acted accordingly. However, Doyle looked in his mirrors before backing up and saw no one in his path, thus, as in *Wallace,* he had no knowledge of Nesvig's presence in his path prior to striking him.

**6.** This statute replaced IND.CODE § 9–1–4–49 (1988).

**7.** This statute replaced IND.CODE § 9–1–4–51 (1988).

driven by a person who does not have a legal right to do so or in violation of this title.

■ A party may be subject to civil liability under IC 9–24–18–4 if that party, either owning or controlling a vehicle, allows an unlicensed person to operate that vehicle. *See Johnson v. Owens,* 639 N.E.2d 1016, 1021 (1994), *trans. denied* (analyzing IND.CODE 9–1–4–51). Because Doyle and the City violated IC 9–24–18–3 and IC 9–24–18–4, Nesvig baldly contends that civil liability attached, and thus, evidence of Doyle's lack of license should not have been excluded.

■ However, the violation of a statutory duty is not actionable negligence unless it is also the proximate cause of the injury. *Inland Steel v. Pequignot,* 608 N.E.2d 1378, 1383 (Ind.Ct.App.1993), *trans. denied.* The violation of a statute raises no liability for injury to another unless the injury was in some manner the result of such violation. *Id.* In order to find that an injury was the proximate result of a statutory violation, the injury must have been a foreseeable consequence of the violation and would not have occurred if the requirements of the statute had been observed. *Id.*

■ In the same vein, mere lack of an operator's license is not in itself evidence of negligence in the operation of the motor vehicle unless there is some causal connection between the injury and the failure to have the license. *Hinkley v. Montgomery Ward, Inc.,* 497 N.E.2d 255, 257 (Ind.Ct.App.1986), *trans. denied.* Unless a causal connection between the injuries and the failure to have a license is shown, the lack of a license is immaterial. *Id.; Shaw v. Hart,* 136 Ind.App. 567, 202 N.E.2d 587 (1964), *reh. denied.*

■ Nesvig fails to present any argument or evidence that Doyle and the City's violation of these statutes was the proximate cause of his injuries. Absent some evidence of a causal connection between the lack of license and the injury, evidence of the lack of license is immaterial. *Id.* Accordingly, we conclude that the trial court did not abuse its discretion when it excluded this evidence.

### IV.

### *Jury Instructions*

■ Fourth, Nesvig contends that the trial court erred when it refused portions of his tendered jury instructions. In determining whether it is error to refuse a tendered jury instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 979 (Ind.1993), *reh. denied.*

First, Nesvig contends that the trial court erred when it omitted language in Instruction 1 regarding a motorist's duty to maintain a proper lookout when operating a vehicle in reverse.[8] Nesvig argues that the trial court erred when it deleted language regarding the motorist's duty to "look in all directions from which a traveler may approach" as this was directly related to Doyle's failure to look in his blind spot and whether that failure constituted willful and wanton conduct. However, as we determined *supra*, the trial court properly granted

---

8. The instruction read:

**A motorist has the right to back his vehicle in a street or highway, but in so doing he must exercise reasonable care with respect to other vehicles or pedestrians, and comply with all pertinent regulations.**
As a general rule, [a] motorist, in backing his vehicle, must exercise ordinary care not to injure others in the process, and reasonable precautions must be taken to the end that the movement may be made with safety. The duty to use due care requires that the motorist adopt reasonable means to ascertain whether others are in the vicinity who may be injured, and he must keep a proper lookout to the rear so that his movement will not endanger other vehicles or pedestrians. **It is not, however, enough for the operator to look in one direction, and common prudence and regard for the safety of others using the highway may require him to look in all directions from which a traveler may be expected to approach.** The motorist must keep a lookout not only before he begins to back, but also while he is in the act of backing.
Record at 325 (omitted language indicated in boldface type).

the Town and Doyle's motion for judgment on the evidence as Nesvig failed to present sufficient evidence that Doyle's failure to physically check his blind spot constituted willful and wanton conduct. This issue was not before the jury; accordingly, Nesvig's argument with regard to this instruction is moot.

■ Nevertheless, to the extent that Nesvig's negligence claim was still before the jury, the trial court did instruct the jury that the operator of a motor vehicle has a duty to keep a proper lookout and defined proper lookout as "the duty to see that which is clearly visible or which in the exercise of due care would be visible." Record at 324. A trial court may refuse a tendered instruction if the instructions given by the court cover the substance of the refused instruction. *K Mart Corp. v. Beall,* 620 N.E.2d 700, 705 (Ind.Ct.App.1993), *reh. denied.* The substance of Nesvig's tendered instruction was covered by the "proper lookout" instruction given by the trial court. Accordingly, we conclude that there is no error with regard to Instruction 1.

■ Next, Nesvig contends that the trial court refused his tendered Instruction 4 which set forth the statutory duty in IC 9–4–1–89 [9] that required that the operator of a motor vehicle give an audible signal when necessary and exercise proper caution upon observing an obviously intoxicated person.[10]

Nesvig argues that by omitting this instruction, the jury never heard that Doyle had a duty to sound his horn to warn of the approach of the snowplow. However, Nesvig fails to consider that the snowplow operated by Doyle was equipped with an automatic sounding device which caused the snowplow to give an audible signal while in reverse. Thus, Nesvig's contention that the trial court did not instruct the jury on the duty set forth by IC 9–4–1–89 is immaterial because by operating the snowplow in reverse and activating the automatic warning device, Doyle fulfilled his statutory duty as a warning signal was given prior to striking Nesvig.

■ Nesvig also argues that jury was not instructed that Doyle exercise proper caution upon observing an obviously intoxicated person pursuant to IC 9–4–1–89(2). However, Nesvig offers no evidence that Doyle should have observed that he was an "obviously intoxicated person" at the time of the accident and acted accordingly. Instead, he relies solely upon the fact that the Town and Doyle introduced evidence of his blood alcohol content. Yet, as indicated *supra* in Issue I, n.4, Nesvig went to great lengths to argue that evidence of Nesvig's blood alcohol content "is not a reliable predictor or indicator of a particular individual's ability or inability to perform tasks." Appellant's Br. at 21. Nesvig cannot have it both ways and now argue that he was "obviously intoxicated." Accordingly, we conclude that the trial court did not err when it refused to instruct the jury on the duties imposed by IC 9–4–1–89.

Finally, Nesvig contends that the trial court erred when it refused his tendered instruction defining both remote and proximate causation.[11] Nesvig argues that the

9. As indicated *supra,* this statute has been replaced with IC 9–21–8–37.

10. Nesvig's tendered instruction provided:
 At the time of the occurrence being considered, there was a statute in effect in the State of Indiana that provided in part:
 Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian ... and shall give an audible signal when necessary and exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person. [I.C. 9–4–1–89.]
 Depending on the facts, due care and proper precaution have been held to include keeping a proper lookout, sounding a horn, slowing down and even stopping. The use of a horn has the purposes of giving the pedestrian an opportunity to protect himself and to provide him with notice that the driver intends to use that part of the highway on which the pedestrian is walking.
 If you find from a preponderance of the evidence that the defendant violated this statute on the occasion in question and that the violation was without excuse or justification, such conduct would constitute negligence on the part of the defendants.
 Record at 281.

11. The instruction read:
 The term "proximate cause" means that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have oc-

jury should have been instructed on the issue of remote cause as it relates to his intoxication. Nesvig argues that the Town and Doyle's defense was based upon his consumption of alcohol and that this consumption was not a proximate cause but a remote cause of the accident.

 A fundamental element of proximate cause is that the injury or consequence of the wrongful act be of a class reasonably foreseeable at the time of the act and the question is whether the wrongful act is one of proximate cause rather than remote cause. *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191, 1199 (Ind.Ct. App.1993), *trans. denied.*

 As indicated in Issue I, *supra*, the issue of Nesvig's intoxication relates to the Town and Doyle's defense of contributory negligence to the extent that whether Nesvig's intoxication led to his negligent conduct and that this negligent conduct proximately caused his injuries. Here, the trial court instructed the jury on the issue of contributory negligence, proximate causation, and that the plaintiff's intoxication at the time of the accident may be considered in determining whether the plaintiff was negligent. The evidence presented to the jury supports the giving of these instructions as Nesvig's intoxication relates directly to his negligent conduct and whether that conduct proximately caused the accident, not whether that conduct was a remote cause. As a result, we conclude that the trial court properly instructed the jury on proximate cause and did not err when it did not instruct the jury on remote cause.

## V.

### *Motion to Correct Error— Bailiff Misconduct*

Fifth and finally, Nesvig argues that the trial court erred when it denied his motion to correct error with regard to the bailiff's improper communication with the jury during its deliberations.

IND.CODE § 34–1–21–4 (1993) provides in pertinent part that:

> The officer having [the jury] under his charge shall not suffer any communication to be made to them or make any himself, except to ask them if they have agreed upon their verdict, unless by order of the court; and he shall not, before the verdict is rendered, communicate to any person of the state of their deliberations or the verdict agreed upon.

IND.CODE § 34–1–21–6 (1993) further provides:

> After the jury have retired for deliberation ... if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

 Where jurors request additional guidance from the court, the proper procedure is for the judge to notify the parties and give them an opportunity to be present in the court before he communicates with the jury. *Smith v. Convenience Store Distributing Co.*, 583 N.E.2d 735, 737 (Ind.1992)(quoting *Averhart v. State*, 470 N.E.2d 666, 690 (Ind.1984), *reh. denied, cert. denied*, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323).

 In instances where the jury is subject to improper communications during deliberations, prejudice is presumed. *Smith, supra*, at 738. If, however, an explanation for the communication is given, and we are satisfied that no harm resulted, then the judgment will be allowed to stand. *Id.* Thus, the presumption of harm is rebuttable. In deciding whether the presumption of harm has been rebutted, we evaluate the nature of the communication to the jury and the effect it might have had upon a fair determination. *Id.*

Nesvig argues that the bailiff's improper response to a jury question during deliberations created a rebuttable presumption of

---

curred. Proximate means the immediate, nearest, direct; next in order, and in its legal sense, closest in causal connection.

A remote cause is not a proximate cause. A remote cause is a negligent act that merely creates a condition by which subsequent injury producing acts of another are made possible. Record at 284.

prejudicial error. In support of his motion to correct error, Nesvig submitted the affidavit of juror, Sharon Salyers. Salyers stated that after the jury deliberated for about one hour, the jury reached a decision for Nesvig and to award him damages of $200,000. The jury called the bailiff regarding a question about the verdict forms. The jury foreperson then asked the bailiff whether the jury could find for Nesvig for less than $300,000. Salyers indicated that she interrupted and informed the bailiff that the jury had unanimously found for Nesvig and wanted to award him $200,000, and asked if that could be done. The bailiff responded that their verdict had to be either zero or $300,000.

Also, in support of his motion, Nesvig submitted the affidavit of his attorney, David Holub. Holub indicated that around forty-five minutes to one hour into the jury's deliberations, counsel for both parties were called into the judge's chambers and told that the bailiff had informed him that the jury had a question regarding the verdict forms. The judge told counsel that he would send the bailiff back to the jury and only tell them, "You are to render your verdict in accord with the verdict forms provided by the Court." Record at 343. Neither party objected. Holub further indicated that about thirty minutes later, counsel were called to court and the court indicated that the bailiff had informed him that the jury required more information about a specific instruction. The court determined that all the instructions should be reread and then replayed an audio cassette of its original instructions to the jury. Another thirty minutes later, the jury returned a verdict in favor of the Town and Doyle and against Nesvig.

Included in these jury instructions was a stipulation by both parties regarding the issue of liability and damages. This instruction read in pertinent part:

> The laws of the State of Indiana limit the amount of liability to a municipality, such as the Town of Porter, to a maximum of $300,000. With these considerations in

mind, the parties stipulate and agree that the injuries and damages sustained by the plaintiff, Ronald Nesvig, as a proximate result of the occurrence described in his Complaint exceed the statutory limit of $300,000 that may be recovered against the defendants, Town of Porter and Barrett Doyle.

> If the jury returns a verdict for the plaintiff and against the defendants on the issue of liability, therefore, $300,000 is the amount of damages to be awarded to the plaintiff.

Record at 307.[12]

Here, the bailiff's response to the juror's question, though in violation of IC 34-1-21-4, correctly stated the law as set forth by the jury instructions as the jury was instructed only to determine the issue of liability. The jury was told to either find for the plaintiff entitling him to $300,000 in damages or find for the defendants. Even after the bailiff's misconduct, the jury still posed a question to the trial court about the verdict forms and then the trial court reread all the jury instructions.

Moreover, the bailiff's conduct did not create a sudden change in events. A sudden turn of events suggests that the misconduct may have had an influence on the verdict. *See Smith, supra.* According to Holub's affidavit, some thirty minutes after the bailiff's misconduct, the jury posed another question to the court regarding the verdict form. Another thirty minutes passed after the jury was reinstructed until the jury returned a verdict against Nesvig. Thus, unlike in *Smith* where the jury rendered its verdict some ten minutes after the judge's improper ex parte communications with the jury, here at least one hour had passed after the bailiff's misconduct until the jury reached its verdict.

In light of these facts, we determine that the presumption of harm created by the bailiff's action was rebutted by the jury's subse-

---

12. In addition, the jury was also reinstructed on the issue of contributory negligence as follows:
The Defendants claim that the Plaintiff was contributorily negligent. If plaintiff was guilty of negligence that proximately contributed to the collision, then plaintiff cannot recover even though the defendants may have been negligent....
Record at 333.

quent conduct. Accordingly, we conclude that the trial court did not err when it denied Nesvig's motion to correct error as Nesvig has failed to show any prejudicial harm resulted from the bailiff's misconduct.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.